SCHWARZ v. WITWER GROCER CO.

No. 12687.

Circuit Court of Appeals, Eighth Circuit.
March 9, 1944.

Rehearing Denied March 30, 1944.

John D. Randall, of Cedar Rapids, Iowa (W. L. Fahey, of Cedar Rapids, Iowa, on the brief), for appellant.

Stewart Holmes, of Cedar Rapids, Iowa, for appellee.

Douglas B. Maggs, Sol., and Bessie Margolin, Asst. Sol., both of Washington, D. C., Reid Williams, Regional Atty., of Kansas City, Mo., and Morton Liftin and Frederick U. Reel, Attys., United States Department of Labor, both of Washington, D. C., for Administration of Wage and Hour Division, as amicus curiae.

Before THOMAS and JOHNSEN, Circuit Judges, and OTIS, District Judge.

OTIS, District Judge.

Plaintiff, appellant here, brought suit in the district court under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., in his own behalf and as agent for two others to recover from defendant, appellee here, claimed minimum wages and overtime pay. Defendant's answer denied that plaintiff and his fellow-workmen were entitled under the facts of their employment to the benefits of the Act. The case was tried to the court. Judgment was for defendant. The ground given for the judgment by the district judge was that since under the facts found these workmen were employed by the defendant both in intrastate and interstate commerce the burden was on them to prove what part of their work was in intrastate and what part in interstate commerce and when each part was performed and that they had failed to sustain that burden.

The facts found were these: (1) Defendant is engaged in the wholesale grocery business with its principal plant at Cedar Rapids, Iowa; (2) the defendant handles some commodities shipped into its warehouse at Cedar Rapids from states other than Iowa; (3) the greater part of defendant's business was selling and distributing goods from its warehouse in Cedar Rapids to Iowa retailers; they were in part loaded by defendant on trucks at the warehouse and so transported by the defendant to retailers in Iowa and in part loaded by defendant on the trucks of customers to be carried away by them; (4) defendant's employees were assigned to "gangs"—(a) "the city gang," which loaded goods from defendant's warehouse for distribution locally to retailers, (b) "the call gang," which loaded goods from defendant's warehouse on the trucks of Iowa customers, and (c) "the unloading gang," which unloaded interstate shipments from railway cars; (5) the workmen seeking recovery in this proceeding were primarily employed in "the city gang" and "the call gang," but "occasionally," when they were not busy "in their own line of work" they assisted "the unloading gang," but when they did that or how much time they gave to that work does not appear. The findings of fact made by the district court, unless clearly erroneous, will be taken by this court as the facts. A review of the record convinces us that the findings were supported amply by the evidence.

The challenge here is to the legal theory upon which the district court gave judgment for the defendant. The challenge is put in these words by plaintiff's counsel: "All employees, in the warehouse of a wholesale grocer who has branch houses, which deal with out-of-state retailers, as well as with retailers in the state, which wholesale grocer purchases a substantial part of goods for re-sale from without the state, are included in the phrase 'engaged in commerce' and are an essential part of the stream of interstate commerce and are entitled to the benefits of the Fair Labor Standards Act." Undoubtedly the facts enumerated in these challenging words are present among the facts found by the district court.

■ The Fair Labor Standards Act provides, in Title 29, U.S.C.A. § 206(a), that—"Every employer shall pay to each of his employees who is engaged in commerce or in the production of goods for commerce" certain minimum wages. The word "commerce," as used in this provision, "means trade, commerce, transportation, transmission, or communication among the several States or from any State to any place outside thereof." 29 U.S.C.A. § 203(b). The minimum wages required to be paid are fixed by the Act (or provision is made in the Act for fixing them) *at so many cents an hour*. (For example, after the expiration of seven years from the effective date of the Act, at "not less than 40 cents an hour.") It would seem to be elementary that an employee seeking to recover under the Act should be required to prove that he comes within its terms: (a) That he was an employee "who is engaged in [interstate] commerce" and (b) how many hours he has been so engaged. Warren-Bradshaw Drilling Co. v. Hall, 317 U.S. 88, 90, 63 S. Ct. 125, 87 L.Ed. 83.

In the opinion of the district court Super-Cold Southwest Co. v. McBride, 5 Cir., 124 F.2d 90, 92, is cited in support of the conclusion reached. The case cited is in point. In that case, as in this, the employee seeking recovery under the Act was principally engaged in intrastate commerce, but occasionally also in interstate commerce. The court said: "An employee working both inter-state and intra-state must point out what part of his work was in intra and what part in inter-state commerce."

■ No decision of the Circuit Court of Appeals for the Eighth Circuit deals with this question. Appellant does not urge upon us that the case cited from the Fifth Circuit is not in point, but he contends that certain opinions of the Supreme Court announce a different rule. If so, of course we must follow it. The cases are: Pickett v. Union Terminal Co. (Williams v. Jacksonville Terminal Co.), 315 U.S. 386, 62 S.Ct. 659, 86 L.Ed. 914; Warren-Bradshaw Drilling Co. v. Hall, 317 U. S. 88, 63 S.Ct. 125, 87 L.Ed. 83; Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 335, 87 L.Ed. 460. Appellant cites them as supporting his challenge of the judgment of the district court.

It is difficult to understand why Williams v. Terminal Co. was cited. It has no relevancy whatever to the proposition for which it is cited. It had to do with the rights of "red caps" under the Railway Labor Act, 45 U.S.C.A. § 151 et seq., and the Fair Labor Standards Act, with whether "tips" received by them may be considered by their employer as a part of the minimum wages to which they are entitled. The strange reasoning by which it is sought to make the decision relevant is this: If a "red cap" carrying a grip from a train to a taxicab is engaged in interstate commerce (the opinion in the case cited assumes that "red caps" are engaged in interstate commerce, but does not deal with that matter in any way), then any employee of defendant is engaged in interstate commerce. The conclusion plainly is a non-sequitur. If in the opinion in the Williams case it had been held that a "red cap" or a number of "red caps" carrying grips exclusively (or almost exclusively) from intrastate trains to taxicabs were engaged in interstate commerce it would have been in point. Nothing of the kind was held.

It is equally difficult to understand why Warren-Bradshaw Drilling Co. v. Hall is cited. It also has no relevancy to the proposition for which it is cited. What is held in that case is that employees of an oil drilling company which drills only to a depth short of the oil sand *stratum* are "in the production of goods for commerce" within the meaning of the Fair Labor Standards Act. From that holding plaintiff argues that "an intimate connection or relation to interstate commerce is sufficient to entitle employees to the benefits" of the Act. But it does not follow that employees, such as plaintiff and his principals, who, as to most of their work, had no connection whatever with interstate commerce, are entitled to the benefits of the Act.

Plaintiff asserts that Walling v. Jacksonville Paper Co. is "more closely in point." It is more closely in point. But it supports the judgment of the court below. In the Walling case it was held that employees of a wholesaler are within the Act if their work is in warehouses into which goods are brought from other states for subsequent delivery to customers within the state, provided there is "a practical continuity of movement of the goods until they reach the customers for whom they are intended," and also provided "the entry of the goods into the warehouse in-

terrupts but does not necessarily terminate their interstate journey." It was expressly held that not "all phases of a wholesale business selling intrastate are covered by the Act solely because it makes its purchases interstate," that "The applicability of the Act is dependent on the character of the employees' work," and that it does apply "if a substantial part of an employee's activities related to goods whose movement in the channels of interstate commerce was established by the test we have described [i. e., if there was "a practical continuity of movement of the goods until they reach the customers for whom they are intended"]."

Plaintiff's complete misconception of the Walling case appears in his brief in the paragraph reading: " * * * a wholesale grocer imports goods for one purpose only, to sell such goods to the retailer who, in turn, sells to the ultimate consumer. Therefore the goods in the warehouse of the Cedar Rapids branch were only pausing momentarily before being delivered to the ultimate consumer. The Walling case is authority for the fact that such goods are in commerce until they arrive on the shelves of the retailer." But, as we have seen, the Walling case had to do with goods in "practical continuity of movement" through the warehouse to "the customers for whom they are intended," i. e. for whom they were intended from the beginning of the movement. The case has no reference to goods coming to rest in a wholesaler's warehouse in the ordinary way. Such an interpretation expressly is rejected. Moreover there is nothing in the Findings of Fact in the present case nor in the underlying record to support the assertion that the goods in defendant's warehouse paused there only "momentarily." They may have rested in the warehouse days or weeks or months or even years.

We have thus reviewed the cases plaintiff cites, not because it has seemed to us that the record presents any real question, but to make sure that even the most liberal interpretation of the Fair Labor Standards Act—and we agree with plaintiff that the tendency of judicial decisions is toward liberal interpretation— could possibly include plaintiff and his fellows within the coverage of the Act. The fact situation is so simple that it ought not to be necessary to go beyond the text of the Act and the application of elementary principles. These employees claim the benefits of the Act. The benefits of the Act are for employees engaged in interstate commerce. These employees, therefore, must have proved that they were engaged in interstate commerce or that "a substantial part of [their] activities" was in interstate commerce. They only proved that a very incidental part of their activities was in such commerce. They failed to make a case.

The judgment should be and is affirmed.