## ENGLERT v. S. BIRCH & SONS CONST. CO. et al.

### No. 11313.

Circuit Court of Appeals, Ninth Circuit.
June 27, 1947.
Writ of Certiorari Denied Nov. 10, 1947.
See 68 S.Ct. 154.

Oscar A. Zabel and Frederick Paul, both of Seattle, Wash., for appellant.

J. Charles Dennis, U. S. Atty., Frank Pellegrini and John E. Belcher, Asst. U. S. Attys., all of Seattle, Wash., for appellees.

Before GARRECHT, MATHEWS and HEALY, Circuit Judges.

MATHEWS, Circuit Judge.

Appellant (F. J. Englert) brought an action against appellees (S. Birch & Sons Construction Company and Morrison-Knudsen Company). The complaint was in four counts. Appellees answered, a trial was had, and a judgment was entered dismissing counts 1-3 and granting in part the relief sought in count 4. From so much of the judgment as dismissed counts 1-3 this appeal is prosecuted.

Count 1 stated a claim of appellant. Count 2 stated a claim assigned to appellant by Donald D. Stuart. Count 3 stated a claim assigned to appellant by John A. Rude.

All the claims were based on §§ 7(a) and 16(b) of the Fair Labor Standards Act of 1938, 29 U.S.C.A. §§ 207(a) and 216(b). Section 7(a) of the Act, 29 U.S.C.A. § 207(a), provides that, with inapplicable exceptions, "No employer shall * * * employ any of his employees who is engaged in commerce or in the production of goods for commerce[1] * * * for a work-

---

[1] Section 3 of the Act, 29 U.S.C.A. § 203, provides that, as used in the Act—

"(b) 'Commerce' means trade, commerce, transportation, transmission, or communication among the several States or from any State to any place outside thereof.

"(c) 'State' means any State of the United States or the District of Columbia or any Territory or possession of the United States.

*     *     *     *     *     *     *

"(i) 'Goods' means goods (including ships and marine equipment), wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof, but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof.

"(j) 'Produced' means produced, manufactured, mined, handled, or in any other manner worked on in any State; and for the purposes of this Act [29 U.S.C.A. §§ 201–219] an employee shall be deemed to have been engaged in the production of

week longer than forty hours * * * unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

Section 16(b) of the Act, 29 U.S.C.A. § 216(b), provides: "Any employer who violates the provisions of * * * [§ 7 of the Act, 29 U.S.C.A. § 207] shall be liable to the employee or employees affected in the amount of * * * their unpaid overtime compensation * * * and in an additional equal amount as liquidated damages. Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated * * *. The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

From June 23, 1944, to February 17, 1945, claimants (appellant and his assignors) were employees of appellees. The complaint alleged, in substance and effect, that, during said period, claimants were engaged in commerce or in the production of goods for commerce,[2] were employed by appellees for workweeks longer than 40 hours and were compensated for their employment in excess of 40 hours at rates less than one and one-half times the regular rates at which they were employed. The answer denied that claimants were engaged in commerce or in the production of goods for commerce. The trial court found that they were not so engaged. That finding is challenged by this appeal.

The following facts were stipulated:

During World War II, it was deemed essential by the Government of the United States that certain islands of the Aleutian group in Alaska be fortified, and that improvements and structures be erected thereon, so that the islands could be utilized for the purpose of National defense. To accomplish that result, various projects were instituted by the Government under the direction of Army engineers.

Appellees obtained from the Government a contract which provided, in general, for the mixing, delivering and placing of asphaltic concrete and asphaltic seal coat on one of the islands, in accordance with plans and specifications previously drawn for the fortification and use of the same for the purpose of defense. The island was owned in its entirety by the United States and was under the absolute control of the United States Army. It was devoted entirely to military occupation. The only persons allowed upon the island were members of the armed forces and the contractors and employees engaged in making the improvements deemed essential by the Army engineers. Amongst these employees were claimants.

The contract obtained by appellees specified certain work to be done under the direction of the Army engineers. In order to accomplish the work adequately, appellees were required to furnish labor, skilled, and unskilled, perform engineering, laboratory and inspection work and supply crews to operate mess halls and quarters. Building equipment and rations were furnished by the Government.

The procurement of approximately 90% of the materials, equipment and supplies used in the overall construction of the project was effected directly by the Government from various manufacturers. Materials, equipment and supplies so procured were shipped to the project by Government-furnished transportation, unloaded from the boats by military personnel and delivered to the warehouse, asphalt plants or shops in the contractors' own area by Government-owned trucks operated by military personnel.

Of the total tonnage of approximately 270,000,000 pounds, approximately 94%

---

goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occupation necessary to the production thereof, in any State."

[2] As used in this opinion, the terms "commerce," "production" and "goods" have the meanings indicated in § 3 of the Act, 29 U.S.C.A. § 203.

was procured by the Government, and the remaining 6% was procured by appellees.

The goods procured by appellees and received at the project by ocean shipment, including repair parts and resale merchandise, were obtained by the Seattle office of appellees from various vendors throughout the United States. In the purchasing of all materials, supplies or goods, title to the items passed directly to the Government from the vendor. Appellees never at any time owned or had title to the purchased material or merchandise. Shipments from the vendor's place of business to Seattle were by Government bill of lading, after inspection and acceptance by the Government at the point of origin, unless the vendor shipped the merchandise F.O.B. Seattle and retained title to the point of delivery.

The majority of appellees' purchases, including all of the resale merchandise, were delivered in Seattle by rail or truck directly to Government-operated or commercial crating and processing plants (under Government contract) for overseas shipment, where the material or merchandise was wrapped, waterproofed and transshipped to the island in question, directly to the resident engineer. Shipment was made by boats operated either by the War Shipping Administration or by the Transportation Corps, without charge to appellees.

Upon arrival of a shipload of goods at the project, the entire handling of all cargo was accomplished by Army personnel, without regard to type or ultimate destination. The equipment, material and goods were stock-piled as fast as possible in an Army sorting or classification yard maintained by the resident engineer. This stock pile of discharged parts, supplies and equipment was guarded by military personnel, sorted by military personnel and distributed to various Government contractors. Each contractor had an expediter on hand whose duty was to claim the goods intended for his company's project.

From the classification yard, the goods were moved to warehouses or other placement designated by appellees' supervisory employees. From there on, the employees of appellees took charge of the materials.

Upon completion of the work called for under the contract, all equipment, repair parts, construction supplies, resale merchandise and food rations were released by the contractor to the contracting officer represented by the resident engineer at the site of the work.

Claimant Englert (appellant) was employed by appellees from June 23, 1944, to February 17, 1945. From June 23, 1944, to July 22, 1944, he was in charge of the commissary store at the campsite. From July 23, 1944, to February 17, 1945, he was classified as an assistant camp manager.

The general functions of camp administration were: To provide all housekeeping services; to operate and maintain mess halls and barracks; to be responsible for laundry facilities, fuel supplies, hauling water, collection and disposal of garbage and trash, and the housing and feeding of approximately 1,600 employees of appellees; and to supervise about 200 cooks and waiters, serving meals 24 hours a day, and about 50 truck drivers, laborers and office personnel.

Claimant Stuart was employed by appellees from June 23, 1944, to February 17, 1945. He was classified as a storekeeper.

Claimant Rude was employed by appellees from June 23, 1944, to February 17, 1945. He was classified as an assistant camp engineer.

■ The stipulated facts do not show that claimants were engaged in commerce or in the production of goods for commerce.[3] There was no substantial evidence

3 Cf. Higgins v. Carr Bros. Co., 317 U. S. 572, 63 S.Ct. 337, 87 L.Ed. 468; McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538; Western Union Telegraph Co. v. Lenroot, 323 U.S. 490, 65 S.Ct. 335, 89 L.Ed. 414; 10 East 40th Street Building v. Callus, 325 U.S. 578, 65 S.Ct. 1227, 89 L.Ed. 1806, 161 A.L. R. 1263; Rosenberg v. Semeria, 9 Cir., 137 F.2d 742; Jewel Tea Co. v. Williams, 10 Cir., 118 F.2d 202; Jax Beer Co. v. Redfern, 5 Cir., 124 F.2d 172; Johnson v. Dallas Downtown Development Co., 5 Cir., 132 F.2d 287; Lofther v. First National Bank, 7 Cir., 138 F.2d 299; Rucker v. First National Bank, 10 Cir., 138 F.2d 699; Noonan v. Fruco Construction Co., 8 Cir., 140 F.2d 633; Convey v. Omaha National Bank, 8 Cir., 140 F.2d 640; Blumenthal v. Girard Trust Co., 3

that they were so engaged. The burden of proving that they were so engaged rested on appellant[4] and was not sustained. We conclude that the trial court's finding was correct.

Cases cited by appellant[5] in support of the contention that the finding was erroneous are distinguishable from this case and do not, in fact, support the contention.

Affirmed.

---

Cir., 141 F.2d 849; Domenech v. Pan American Standard Brands, 1 Cir., 147 F.2d 994; Nieves v. Standard Dredging Corp., 1 Cir., 152 F.2d 719; Phillips v. Graham Aviation Co., 5 Cir., 157 F.2d 443.

[4] D. A. Schulte, Inc., v. Gangi, 328 U.S. 108, 66 S.Ct. 925, 90 L.Ed. 1114, 167 A.L.R. 208; Rucker v. First National Bank, supra; Noonan v. Fruco Construction Co., supra.

[5] Warren-Bradshaw Drilling Co. v. Hall, 317 U.S. 88, 63 S.Ct. 125, 87 L.Ed. 83; Walling v. Jacksonville Paper Co., 317 U. S. 564, 63 S.Ct. 494, 87 L.Ed. 656; Overstreet v. North Shore Corp., 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. 656; Pedersen v.

J. F. Fitzgerald Construction Co., 318 U.S. 740, 742, 63 S.Ct. 558, 87 L.Ed. 1119; Phillips, Inc., v. Walling, 324 U.S. 490, 65 S.Ct. 807, 89 L.Ed. 1095, 157 A.L.R. 876; Borden Co. v. Borella, 325 U.S. 679, 65 S.Ct. 1223, 89 L.Ed. 1865, 161 A.L.R. 1258; Fox v. Summit King Mines, 9 Cir., 143 F.2d 926; Southern California Freight Lines v. McKeown, 9 Cir., 148 F.2d 890; Ritch v. Puget Sound Bridge & Dredging Co., 9 Cir., 156 F. 2d 334; Walling v. American Stores Co., 3 Cir., 133 F.2d 840; Clyde v. Broderick, 10 Cir., 144 F.2d 348; Bozant v. Bank of New York, 2 Cir., 156 F.2d 787; Meeker Cooperative Light & Power Ass'n v. Phillips, 8 Cir., 158 F.2d 698.