**SODERBERG et al. v. S. BIRCH & SONS CONST. CO. et al.**

**No. 11314.**

Circuit Court of Appeals, Ninth Circuit.

July 9, 1947.

Writ of Certiorari Denied Nov. 10, 1947.

See 68 S.Ct. 154.

Oscar A. Zabel and Frederick Paul, both of Seattle, Wash., for appellants.

J. Charles Dennis, U. S. Atty., Frank Pellegrini and John E. Belcher, Asst. U. S. Attys., all of Seattle, Wash., for appellees.

Before GARRECHT, MATHEWS and HEALY, Circuit Judges.

MATHEWS, Circuit Judge.

Appellants (Edward C. Soderberg, John J. Kissane and Willard B. Howell) brought

---

[5] Warren-Bradshaw Drilling Co. v. Hall, 317 U.S. 88, 63 S.Ct. 125, 87 L.Ed. 83; Walling v. Jacksonville Paper Co., 317 U. S. 564, 63 S.Ct. 494, 87 L.Ed. 656; Overstreet v. North Shore Corp., 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. 656; Pedersen v.

J. F. Fitzgerald Construction Co., 318 U.S. 740, 742, 63 S.Ct. 558, 87 L.Ed. 1119; Phillips, Inc., v. Walling, 324 U.S. 490, 65 S.Ct. 807, 89 L.Ed. 1095, 157 A.L.R. 876; Borden Co. v. Borella, 325 U.S. 679, 65 S.Ct. 1223, 89 L.Ed. 1865, 161 A.L.R. 1258; Fox v. Summit King Mines, 9 Cir., 143 F.2d 926; Southern California Freight Lines v. McKeown, 9 Cir., 148 F.2d 890; Ritch v. Puget Sound Bridge & Dredging Co., 9 Cir., 156 F. 2d 334; Walling v. American Stores Co., 3 Cir., 133 F.2d 840; Clyde v. Broderick, 10 Cir., 144 F.2d 348; Bozant v. Bank of New York, 2 Cir., 156 F.2d 787; Meeker Cooperative Light & Power Ass'n v. Phillips, 8 Cir., 158 F.2d 698.

an action against appellees (S. Birch & Sons Construction Company and Morrison-Knudsen Company). The complaint was in 85 counts. Appellees answered, and a trial was had. At the trial, counts 51, 74 and 81 were dismissed on motion of appellants. After the trial, a judgment was entered granting in part the relief sought in counts 1, 2, 8, 9, 16 and 18 and dismissing counts 3–7, 10–15, 17, 19–50, 52–73, 75–80 and 82–85. Appellants appealed from the whole of the judgment except the part relating to count 16. On motion of appellants, we dismissed the appeal as to counts 6, 9, 11, 14, 41–50, 52–56, 69, 70, 72, 73, 75, 78 and 85. There remain for consideration 55 counts—counts 1–5, 7, 8, 10, 12, 13, 15, 17–40, 57–68, 71, 76, 77, 79, 80 and 82–84.

Count 1 stated a claim of appellant Kissane. Count 2 stated a claim of appellant Soderberg. Count 3 stated a claim of appellant Howell. Count 8 stated a claim assigned to appellants by Dewitt T. Ferrell. Count 18 stated a claim assigned to appellants by Edgar W. Scheid. Counts 4, 5, 7, 10, 12, 13, 15, 17, 19–40, 57–68, 71, 76, 77, 79, 80 and 82–84 stated claims assigned to appellants by persons other than Ferrell and Scheid.

All the claims were based on §§ 7(a) and 16(b) of the Fair Labor Standards Act of 1938, 29 U.S.C.A. §§ 207(a) and 216(b). Section 7(a) of the Act, 29 U.S.C.A. § 207(a), provides that, with inapplicable exceptions, "No employer shall * * * employ any of his employees who is engaged in commerce or in the production of goods for commerce[1] * * * for a workweek longer than forty-hours * * * unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

Section 16(b) of the Act, 29 U.S.C.A. § 216(b), provides: "Any employer who violates the provisions of * * * [§ 7 of the Act, 29 U.S.C.A. § 207] shall be liable to the employee or employees affected in the amount of * * * their unpaid overtime compensation * * * and in an additional equal amount as liquidated damages. Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated * * *. The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

During certain periods, claimants (appellants and their assignors) were employees of appellees—claimant Kissane during the period from April 3, 1944, to May 6, 1944, and the period from June 1, 1944, to December 20, 1944; claimant Soderberg during the period from March 6, 1944, to April 22, 1944, and the period from May 5, 1944, to December 16, 1944; claimant Ferrell during the period from May 5, 1944, to October 14, 1944; claimant Scheid during the period from April 26, 1944, to July 8, 1944, and the period from August 2, 1944, to December 30, 1944; and the other claimants during various periods between April 3, 1944, and February 24, 1945.

The complaint alleged, in substance and effect, that, during said periods, claimants were engaged in commerce or in the production of goods for commerce,[2] were employed by appellees for workweeks longer than 40 hours and were compensated for their employment in excess of 40 hours at rates less than one and one-half times the regular rates at which they were employed. The answer denied these allegations.

The trial court found that claimant Kissane during the period from April 3, 1944, to May 6, 1944, claimant Soderberg during the period from March 6, 1944, to April 22, 1944, claimant Ferrell during the period from July 14, 1944, to August 22, 1944, and claimant Scheid during the period from April 26, 1944, to July 8, 1944, were engaged in commerce or in the production of goods for commerce, were employed by appellees for workweeks longer than 40 hours and were compensated for their employment in excess of 40 hours at rates

---

[1] See § 3 of the Act, 29 U.S.C.A. § 203.

[2] As used in this opinion, the terms "commerce," "production" and "goods" have the meanings indicated in § 3 of the Act, 29 U.S.C.A. § 203.

less than one and one-half times the regular rates at which they were employed; that Kissane's unpaid overtime compensation amounted to $110.93; that Soderberg's amounted to $37.92; that Ferrell's amounted to $208.53; and that Scheid's amounted to $70. These findings are not challenged.

Pursuant to these findings, the trial court awarded, on counts 1, 2, 8 and 18 (the Kissane, Soderberg, Ferrell and Scheid counts), the indicated amounts of unpaid overtime compensation and additional equal amounts as liquidated damages, with attorney's fees and costs, as provided in § 16(b) of the Act, 29 U.S.C.A. § 216(b).

The trial court found that none of the claimants (except Kissane during the period from April 3, 1944, to May 6, 1944, Soderberg during the period from March 6, 1944, to April 22, 1944, Ferrell during the period from July 14, 1944, to August 22, 1944, and Scheid during the period from April 26, 1944, to July 8, 1944) was engaged in commerce or in the production of goods for commerce. That finding is challenged by this appeal.

The following facts were stipulated:

During World War II, it was deemed essential by the Government of the United States that certain islands of the Aleutian group in Alaska be fortified, and that improvements and structures be erected thereon, so that the islands could be utilized for the purpose of National defense. To accomplish that result, various projects were instituted by the Government under the direction of Army engineers.

Appellees obtained from the Government three contracts which provided, in general, for the mixing, delivering and placing of asphaltic concrete and asphaltic seal coat on three of the islands, in accordance with plans and specifications previously drawn for the fortification and use of the same for the purpose of defense. The islands were owned in their entirety by the United States and were under the absolute control of the United States Army. They were devoted entirely to military occupation. The only persons allowed upon the islands were members of the armed forces and the contractors and employees engaged in making the improvements deemed essential by the Army engineers. Among these employees were claimants.

The contracts obtained by appellees specified that all of the work would be done under the direction of Army engineers. In order to accomplish the work adequately, appellees were required to furnish labor, skilled and unskilled, perform engineering, laboratory and inspection work and supply crews to operate mess halls and quarters. Building equipment and rations were furnished by the Government.

The procurement of approximately 90% of the materials, equipment and supplies used in the overall construction of the projects was effected directly by the Government from various manufacturers. Materials, equipment and supplies so procured were shipped to the projects by Government-furnished transportation, unloaded from the boats by military personnel and delivered to a sorting dock or to warehouses by Government-owned trucks operated by military personnel or by employees of appellees.

Of the total tonnage of approximately 270,000,000 pounds, approximately 94% was procured by the Government, and the remaining 6% was procured by appellees.

The goods procured by appellees and received at the projects by ocean shipment, including repair parts and resale merchandise,[3] were obtained by the Seattle office of appellees from various vendors throughout the United States. In the purchasing of all materials, supplies or goods, title to the items passed directly to the Government from the vendor. Appellees never at any time owned or had title to the purchased material or merchandise. Shipments from the vendor's place of business to Seattle were by Government bill of lading, after inspection and acceptance by the Government at the point of origin, unless the vendor shipped the merchandise F.O.B. Seattle and retained title to the point of delivery.

The majority of appellees' purchases, including all of the resale merchandise, were delivered in Seattle by rail or truck di-

---

[3] Merchandise intended for sale in Alaska.

rectly to Government-operated or commercial crating and processing plants (under Government contract) for overseas shipment, where the material or merchandise was wrapped, waterproofed and trans-shipped to the islands in question, directly to the resident engineer. Shipment was made by boats operated either by the War Shipping Administration or by the Transportation Corps, without charge to appellees.

Upon arrival of a shipload of goods at the projects, the entire handling of all cargo was accomplished by Army personnel, without regard to type. The equipment, material and goods were moved from the dock as fast as possible to a sorting or classification yard maintained by the resident engineer, or to a warehouse. Until arrival at a warehouse, the materials, supplies and equipment were guarded by military personnel and sorted by military personnel. In cases where the goods were moved to a sorting or classification yard, an expediter was on hand to claim the goods intended for his company's project.

Upon completion of the work called for under the contracts, all equipment, repair parts, construction supplies, resale merchandise and food rations were accounted for by the contractor to the resident engineer.

Supplies and subsistence stores required for all mess halls and quarters were procured directly at the site of the project from the United States Army Quartermaster Corps when needed.

The following facts were shown by evidence:

Of the 55 claimants, 32 were clerks, 12 were timekeepers, three were auditors, two were expediters, two were storekeepers, one was a store manager, one was a camp manager, one was a switchboard operator, and one was a truck foreman.

All the claimants were employed in Alaska [4] at the projects mentioned in the stipulation. At these projects, appellees operated, for the Government, warehouses and commissaries (retail stores) owned by the Government. The materials, equipment, supplies and goods (including resale merchandise) mentioned in the stipulation were stored in the warehouses. From time to time, resale merchandise was withdrawn from the warehouses and placed on sale in the commissaries. Sales thereof were made, for the Government, to appellees' employees and other customers in Alaska. Profits realized from such sales belonged to the Government. Appellees had, at each of the projects, an office called a construction office. They had another office in Seattle, Washington.

Some of the claimants were employed in the warehouses and handled the materials, equipment, supplies and goods stored there. Some were employed in the commissaries and handled the merchandise sold there. Some were employed in the construction offices. Some compiled records pertaining to the projects—time sheets, pay rolls, inventories and lists of materials, equipment, supplies and goods received at the projects. Some wrote letters and reports about the projects and the work being done there. Some of these records, letters and reports were sent to appellees' Seattle office.

The facts do not show that any of the claimants (except Kissane during the period from April 3, 1944, to May 6, 1944, Soderberg during the period from March 6, 1944, to April 22, 1944, Ferrell during the period from July 14, 1944, to August 22, 1944, and Scheid during the period from April 26, 1944, to July 8, 1944) was engaged in commerce or in the production of goods for commerce.[5] The burden of proving that they were so engaged rested on appellants [6] and was not sustained. We conclude that the trial court's finding was correct.

Cases cited by appellants [7] in support of

---

[4] Prior to their employment in Alaska, Kissane, Soderberg and Scheid were employed in Seattle, Washington—Kissane during the period from April 3, 1944, to May 6, 1944, Soderberg during the period from March 6, 1944, to April 22, 1944, and Scheid during the period from April 26, 1944, to July 8, 1944.

[5] Cf. Englert v. S. Birch & Sons Construction Co., 9 Cir., 165 F.2d 34, and cases there cited.

[6] Englert v. S. Birch & Sons Construction Co., supra.

[7] Warren-Bradshaw Drilling Co. v. Hall, 317 U.S. 88, 63 S.Ct. 125, 87 L.Ed. 83; Walling v. Jacksonville Paper Co., 317

the contention that the finding was erroneous are distinguishable from this case and do not, in fact, support the contention.

Affirmed.

U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460; Overstreet v. North Shore Corp., 318 U. S. 125, 63 S.Ct. 494, 87 L.Ed. 656; Pedersen v. J. F. Fitzgerald Construction Co., 318 U.S. 740, 63 S.Ct. 558, 87 L.Ed. 1119; Phillips v. Walling, 324 U.S. 490, 65 S. Ct. 807, 89 L.Ed. 1095, 157 A.L.R. 876; Borden Co. v. Borella, 325 U.S. 679, 65 S.Ct. 1223, 89 L.Ed. 1865, 161 A.L.R. 1258; Fox v. Summit King Mines, 9 Cir., 143 F.2d 926; Southern California Freight Lines v. McKeown, 9 Cir., 148 F. 2d 890; Ritch v. Puget Sound Bridge & Dredging Co., 9 Cir., 156 F.2d 334; Walling v. American Stores, 3 Cir., 133 F.2d 840; Clyde v. Broderick, 10 Cir., 144 F. 2d 348; Bozant v. Bank of New York, 2 Cir., 156 F.2d 787; Meeker Co-operative Light & Power Ass'n v. Phillips, 8 Cir., 158 F.2d 698.