### MAITREJEAN v. METCALFE CONSTRUCTION CO. et al.
### No. 13499.

Circuit Court of Appeals, Eighth Circuit.
Jan. 12, 1948.

Lewis L. Anderson, of St. Paul, Minn., for appellant.

William Mitchell, of St. Paul, Minn. (Pierce Butler, Edgar G. Vaughan and Doherty, Rumble, Butler & Mitchell, all of St. Paul, Minn., on the brief) for appellees.

William S. Tyson, Sol., Morton Liftin, Acting Asst. Sol., Frederick U. Reel, Atty., and William A. Lowe, Regional Atty., all of Washington, D. C., for Administrator of Wage and Hour Division, U. S. Department of Labor, amicus curiae.

572

Before GARDNER, WOODROUGH and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

This is an appeal from a judgment dismissing an action for overtime compensation, liquidated damages, attorney's fees, and costs under the provisions of section 16(b) of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 216(b).

During the time of appellant's employment the appellees were engaged in a joint enterprise under a cost-plus-a-fixed-fee contract with the Government in the construction of various warehouses, barracks, mess halls, garages, airport hangars, and air strips in Alaska at points along and adjacent to the Alcan Highway from Fairbanks, Alaska, to a point near the Canadian border. Appellant was hired by appellees as a timekeeper at a salary of $275 a month and worked in that capacity and as a clerk in the Commissary Department from July 5, 1943, to April 23, 1944. On this appeal he contends that the district court erred in refusing to hold that appellant was regularly employed in work necessary to and essential to the moving of materials and supplies in interstate commerce from November 4, 1943, to April 23, 1944, the period of appellant's service as a timekeeper at Fairbanks, Alaska.

The case was tried before the court without a jury. The trial judge on the evidence held that the appellant had not "shown that during any particular week or weeks a substantial part of his work related to the keeping of time of men who were engaged in handling or hauling of materials or supplies which at the time were in interstate commerce."

The evidence fairly established the following facts. The appellees, under the supervision and control of the United States Engineers, Northwest Division, were engaged solely in the original construction of structures of the character mentioned above necessary for the use of the military in the war against Japan. They performed no work on the Alcan Highway or other interstate highway or instrumentality of interstate commerce. None of the structures built by appellees were used as instruments of commerce while under construction or while in the possession or control of appellees.

The materials used in the construction work were acquired by the United States Engineers in the United States, in Canada, and in Alaska, and were transported from the various sources of supply to Fairbanks, Alaska, where they were stored in receiving yards and warehouses from which they were subsequently distributed to points along the Alcan Highway between Fairbanks and the Canadian border at which construction work was in progress. The title to all materials was at all times in the United States. Practically all of the rough lumber used by appellees, as well as some of the finished lumber, millwork, plumbing and electrical supplies used in the buildings, was acquired in Alaska, but substantial amounts of finished lumber and millwork and the greater part of electrical and plumbing materials were brought to Fairbanks from the United States. Appellees' base of operations in Alaska was at Fairbanks, and the greater part of their work was in the vicinity of that town. All materials brought into Alaska were consigned from points of origin to the United States Engineers for the account of the appellees for delivery at Fairbanks, Alaska. None of the material was acquired for or consigned to any particular job site in Alaska or to any destination other than Fairbanks. The United States Engineers and the appellees established receiving yards at Fairbanks for the reception and classification of materials arriving at that point for use in the construction work. None of appellees' employees had any connection with the transportation or handling of construction materials prior to the arrival of these materials at Fairbanks except as noted below in this paragraph. Trucks used for the movement of materials from warehouses and material yards at Fairbanks to construction work in and about Fairbanks were the property of the United States Army but were operated by truck drivers employed by appellees. Materials moving to other construction sites in Alaska were transported in army trucks operated by army personnel, with the exception that in rare emergencies trucks operated by truck drivers employed by appellees assisted in this

transportation. There is also some indication in the evidence that on very rare and infrequent occasions truck drivers employed by appellees may have operated trucks transporting supplies from Valdez, Alaska, to Fairbanks. Generally speaking, however, this transportation was handled exclusively either by the army personnel or by independent contractors.

Appellees operated twenty trucks at Fairbanks. Appellees' employees handled ma terials into and out of the warehouses at Fairbanks. There were recurring periods of ten days to two weeks in which no shipments originating outside of Alaska were received in Fairbanks.

At times the appellees employed as many as 3600 workers in the Fairbanks area. The wages, salaries, and hours of work of all employees, skilled and unskilled, manual, clerical, and supervisory were fixed by directives issued by the United States Engineers to the contractors. All employees were required to execute written contracts of employment. Clerical or nonmanual workers of appellant's classification were employed for basic workweeks of 48 hours for stipulated monthly salaries. By directives issued by the United States Engineers to the appellees, employees of this classification were required to work without extra compensation the number of hours each week required to complete the work assigned them. They were paid time and a half for work on holidays and double time when required, with the approval of the Engineers, to work on a seventh consecutive day. Appellant was not compensated for overtime for any workweek except in accordance with this labor policy.

Apparently the labor force was largely if not entirely recruited in the United States. Because of the absence of a labor supply in Alaska and because appellees were engaged in an important military project in which haste was of first importance, they were required by the United States Engineers to assign surplus employees in any classification to work in any other or different classification where their services were needed. The result of this policy was that an employee classified as a truck driver, listed on the time sheets and paid as such, was frequently engaged in work as a carpenter or in digging ditches or washing dishes, or in any other capacity in which his services were needed in order that the work might proceed with despatch. The appellant, classified and paid as a timekeeper, worked for several months as a retail sales clerk in canteens operated by appellees for the accommodation of their employees. The profits if any from the canteen operations went to the United States. Appellant does not claim on this appeal that he was engaged in commerce within the meaning of the Fair Labor Standards Act while employed as canteen clerk.

One of the larger projects constructed by appellees in Fairbanks was known as Zhender Camp. Appellant was employed in the office of the timekeeper at Zhender. There were five men employed in the timekeeping office. Appellant described his work as follows. Employees of appellees going to work called at the timekeeper's office where each employee received a disk, referred to in the evidence as a "brass," stamped with the employee's number. On the completion of his hours of work the employee returned the "brass" to the timekeeper's office. Appellant distributed "brass" to employees going to work and received "brass" from employees returning from work, keeping a record of the time when the employee picked up his "brass" and the time when he returned it. The actual time which the employee spent in working was kept by a foreman. The foreman's time sheets were returned to the timekeeper's office for comparison with the "brass" sheets. Discrepancies between the two records were corrected, and the appellant worked in transcribing corrected time sheets for transmission to the payroll office. Appellant did not know what the men whose records he kept were doing on any particular day. All employees were paid according to classification and not according to work actually performed.

Appellant testified that he kept the records mentioned for approximately 250 to 300 men. He carried on his roll an average of 40 to 50 men classified as truck drivers. Other employees on his roll were carpenters, mechanics, cooks, storekeepers, elec-

tricians, warehousemen, and men employed exclusively in construction work.

In the course of his employment appellant became acquainted with many of the men on his rolls. He said that regularly he observed truck drivers whose time he kept leaving the warehouses, which were adjacent to his place of employment, driving trucks loaded with materials for use in the construction work. Some of these truck drivers did not return their "brass" for more than 24 hours from which appellant understood that they had driven trucks to distant construction sites, the most distant of which was more than 250 miles from Fairbanks. He kept the record for approximately 20 warehousemen. He testified that on occasion he saw these employees at work. Some of them were unloading trucks which had brought materials to Fairbanks, some were loading trucks from warehouses for distribution to the construction sites, and some were working in the warehouses. He had also seen men whose time he was keeping or had kept unloading electrical supplies from railroad cars. He did not know either the origin or destination of any of the materials whose loading and unloading and transportation he observed.

Appellant's main reliance in the district court in support of his claim that he was engaged in commerce within the meaning of the Fair Labor Standards Act was that the materials coming from outside of Alaska and used by the appellees at the different construction sites in Alaska remained in commerce until delivery at the place or places where the materials were used. The argument supported by the Administrator, amicus curiae, is repeated here. On this assumption it is contended that since the appellant regularly kept the time of some 40 to 50 truck drivers engaged in hauling materials from Fairbanks to other points in Alaska where construction work was done, he was engaged for a substantial part of his time in work so intimately connected with interstate transportation as to be a part of it. Reliance is placed on Walling v. Jacksonville Paper Co., 317 U. S. 564, 63 S.Ct. 332, 87 L.Ed. 460, and Walling v. Mutual Wholesale Food & Supply Co., 8 Cir., 141 F.2d 331, and similar cases involving wholesale distributors. The rule of these cases is that an interstate journey is not ended by a mere temporary pause at a warehouse on the way to the intended destination. Appellant also points to the evidence that materials coming into Fairbanks were handled into and out of the warehouses at Fairbanks by appellees' employees and to his testimony that he had seen some of the employees whose time he kept unloading materials arriving at Fairbanks.

■ It may well be that a timekeeper, a substantial portion of whose time is given to keeping the time of employees engaged in interstate commerce, is entitled to the protection of the Act, even though, as in the present case, his employer's business is local in character and only incidentally concerned with commerce. Kirschbaum Co. v. Walling, 316 U.S. 517, 524, 62 S.Ct. 1116, 86 L.Ed. 1638; Walling v. Jacksonville Paper Co., supra, at page 572 of 317 U.S. at page 337 of 63 S.Ct. Even so, the burden is upon the employee to show that a substantial portion of his time was devoted to work within the protection of the Act. Walling v. Jacksonville Paper Co., supra., at page 572 of 317 U.S. at page 337 of 63 S.Ct.; Schwarz v. Witwer Grocer Co., 8 Cir., 141 F.2d 341, 343; Noonan v. Fruco Const. Co., 8 Cir., 140 F.2d 633, 634; Schulte, Inc. v. Gangi et al., 328 U.S. 108, 120, 66 S.Ct. 925, 90 L.Ed. 1114, 167 A.L.R. 208; Warren-Bradshaw Drilling Co. v. Hall, 317 U.S. 88, 90, 63 S.Ct. 125, 87 L.Ed. 83; Skidmore v. John J. Casale, Inc., 2 Cir., 160 F.2d 527, 530; Englert v. S. Birch & Sons Const. Co., 9 Cir., 163 F.2d 34, 37, certiorari denied 68 S.Ct. 154; Soderberg v. S. Birch & Sons Const. Co., 9 Cir., 163 F.2d 37, 40, certiorari denied 68 S.Ct. 154; Cohen et al. v. Cauldwell Wingate Co., 270 App.Div. 478, 60 N.Y.S.2d 365, affirmed without opinion 296 N.Y. 776, 71 N.E.2d 213, certiorari denied 68 S.Ct. 98.

■■ We agree with the district court that the evidence in this case "is too indefinite and too general to justify a finding that a substantial part of his (appellant's) activities related to goods whose movements were in channels of commerce." Fairbanks was the intended final destination of all construction materials. The inter-

state transportation ended when the materials were unloaded in the receiving and classification yards at Fairbanks or at the very latest at the warehouses in Fairbanks. Employees of appellees who handled the materials after delivery to appellees at Fairbanks, whether engaged in storing or sorting materials in the receiving yards or warehouses or loading them into trucks for transportation to the various job sites or in transporting them or engaged in repairing trucks used in such transportation were not engaged in interstate commerce, and appellant in keeping their time was not so engaged. Higgins v. Carr Bros. Co., 317 U.S. 572, 574, 63 S.Ct. 337, 87 L.Ed. 468; Crabb et al. v. Welden Bros. et al., 8 Cir., 164 F.2d 797; Schwarz v. Witwer Grocer Co., supra. The most that the evidence shows concerning possible activity of the appellant in commerce is that some of the employees on his timekeeping list worked for some part of their time in unloading or handling materials arriving at Fairbanks from the United States and were for that time engaged in commerce. Clyde v. Broderick, 10 Cir., 144 F.2d 348, 351; 29 U.S.C.A. § 203(b), (c).[1] Neither the number of employees whose time appellant kept and who may have been engaged at times in unloading or handling merchandise whose interstate journey was not completed until unloaded, nor the time in which they were so engaged appears from any evidence in the record. The evidence does not show nor does it support the inference that appellant devoted a substantial part of his time in keeping the time records of men regularly employed in commerce. He carried on his records as many as 300 men. All except a small but indefinite number of them were exclusively engaged in local construction work.

Evidence of the character relied on by appellant in this case was held insufficient to support the claims of employees for recovery under the Fair Labor Standards Act by the Ninth Circuit in the Englert and Soderberg cases, supra, and by the courts of New York in the Cohen case, supra. The Englert and Soderberg cases concerned claims of employees engaged in the construction of military projects in the Aleutian Islands. The supplies used in the construction work were procured in the United States by Government agencies, transported to the scene of operations, unloaded from ships by military personnel, and delivered to sorting docks and warehouses by Government owned trucks operated by military personnel or employees of appellee. It was held that employees handling materials stored in warehouses, retail clerks in the commissaries, and clerks in construction offices compiling time sheets, payrolls, and inventories were not engaged in commerce. In the Cohen case the employees were timekeepers, employed by a contractor building a military camp. Some of the contractor's workmen were engaged purely in local construction work and others in the repair of interstate roads and in unloading interstate shipments. The timekeepers failed to identify the particular individuals engaged in commerce or to prove any proportion of time which they individually or collectively devoted to the keeping of time of workmen engaged in commerce. They were denied recovery on the ground that the evidence was insufficient to show that they were engaged in commerce for a substantial part of their working time.

The judgment of the District Court is affirmed.

---

[1] "§ 203. Definitions
"As used in sections 201-219 of this title—
* * * * * * * *
"(b) 'Commerce' means trade, commerce, transportation, transmission, or communication among the several States or from any State to any place outside thereof.
"(c) 'State' means any State of the United States or the District of Columbia or any Territory or possession of the United States."