170 So.2d 283

**G. L. McNEIL**

**v.**

**J. J. GANUS.**

**4 Div. 96.**

Supreme Court of Alabama.

Nov. 19, 1964.

Rehearing Denied Jan. 7, 1965.

Albrittons & Rankin, Andalusia, for appellant.

W. H. Baldwin, Andalusia, for appellee.

GOODWYN, Justice.

Suit was brought by J. J. Ganus, appellee, against his former employer, G. L. McNeil, d/b/a McNeil Concrete Works, appellant, under the provisions of the Fair Labor Standards Act of 1938, as amended (29 U.S.C.A. § 201 et seq.), to recover alleged underpayment of minimum compensation, unpaid overtime compensation, liquidated damages, and an attorney's fee (29 U.S. C.A. § 216). There was a jury verdict for plaintiff in the amount of $704 for additional wages and $704 for liquidated damages. Judgment for plaintiff was rendered for said amounts, together with an attorney's fee in the amount of $235, fixed by the court. McNeil, the employer, brings this appeal from that judgment. His motion for a new trial was overruled.

We are at the conclusion that the judgment appealed from is due to be reversed.

Ganus was employed by McNeil from the week ending January 2, 1959, through the week ending March 14, 1960, a total of 57 weeks. He was paid at the rate of $6 per day for an 8-hour day, or 75¢ per hour. His hours of work per week varied from a low of 8 to a high of 56. During 29 of the 57 weeks he worked more than 40 hours. He seeks in this suit to recover, for all of the hours worked in all of the 57 weeks, the difference between the amount paid him by McNeil (75¢ per hour) and the minimum wage ($1 per hour) fixed by the Fair Labor Standards Act of 1938, supra, during his employment, overtime pay for the hours he worked in excess of 40 in any week, and liquidated damages in an amount equal to said two sums. The jury's verdict awarded him his full claim.

The decisive question on this appeal is whether the jury's award of Ganus' claim, covering the entire period of his employment, finds support in the evidence. In other words, does the evidence show that Ganus, during each and every week of his employment, was engaged "in commerce" or "in the production of goods for commerce," within the meaning of those terms as used in the Fair Labor Standards Act, so as to bring him within the protection of said Act? We think not.

There can be little doubt, from a consideration of the evidence, that McNeil's business was fundamentally intrastate.

During the period of Ganus' employment, McNeil owned and operated two plants for making concrete burial vaults, septic tanks and drainage tile. One of the plants was located in Andalusia, Alabama, and the other in Crestview, Florida. The plants were about fifty miles apart, and about equal distance from the Alabama-Florida line. McNeil testified, in substance, that he acquired the two plants in order to avoid being involved in interstate transactions; that he set them up so he could supply his customers in Alabama from the Andalusia plant and those in Florida from the Crestview plant; that it was never intended that the products from either plant should be delivered out of the State where manufactured.

During the period here involved, McNeil sold and delivered a total of 456 burial vaults and 284 septic tanks and grease traps from his Andalusia plant. It is Ganus' contention that McNeil, during said period, "delivered 26 vaults made at his Alabama plant in Florida" and "1 septic tank made in Alabama was delivered in Florida." Most of the 26 vaults were delivered to cemeteries close to the Alabama-Florida line, which, in some instances, was not clearly established. For instance, the State line runs through the cemetery at Florala, Alabama, but it is not generally known where the line is. McNeil had an agreement with the undertaker in Florala that vaults to be used on the Alabama side of the cemetery would be ordered from the Andalusia plant and those on the Florida side from the Crestview plant. However, there is evidence that 9 of the vaults from Andalusia were placed on the Florida side of the cemetery. According to McNeil's evidence, the delivery of the Andalusia products in Florida was through error; that the sales were made in Alabama, for delivery

**336**

in Alabama, and that the Alabama sales tax was paid on said sales.

The time when these out-of-state deliveries were made, that is, the particular week or weeks of delivery, does not appear from the evidence. Nor is there evidence that Ganus performed services in connection with these products during any particular week or weeks. Although Ganus testified that he worked on the vaults and septic tanks manufactured at the Andalusia plant in each week of his employment, there is no indication that such work, in any specified week or weeks, was in connection with the products claimed to have been transported across the State line. We find no evidence at all showing when these interstate deliveries were made. Nor does the evidence show the sequence of such deliveries, that is, whether they were made regularly during any particular period of time. Under the evidence, it could have been within one or two weeks.

It seems obvious, from the evidence, that there was no occasion for Ganus to work on said products during each and every week of his employment. The jury's finding that he performed such work during the entire period of his employment is not supported by the evidence.

 Where the "commerce" or "production of goods for commerce" is irregular, sporadic, occasional or accidental, as in this case, the burden of proof is on the employee to show in which work week or work weeks he was engaged, for a substantial part of his working time, in such "commerce" or "production of goods for commerce." Super-Cold Southwest Co. v. McBride, 5 Cir., 124 F.2d 90; Jax Beer Co. v. Redfern, 5 Cir., 124 F.2d 172; Schwarz v. Witwer Grocer Co., 8 Cir., 141 F.2d 341; Maitrejean v. Metcalfe Construction Co., 8 Cir., 165 F.2d 571; Mornford v. Andrews, 5 Cir., 151 F.2d 511; Hill v. Jones, D.C., 59 F.Supp. 569; Corbett v. Schlumberger Well Surveying Corporation, D.C., 43 F.Supp. 605; Couch v. Ward, 205 Ark. 308, 168 S.W.2d 822, 827. And this burden is "not sustained by pointing to some incidental interstate activity of a fundamentally, intrastate business." Mitchell v. Welcome Wagon, Inc., D.C., 139 F.Supp. 674; 6 Cir., 232 F.2d 892.

Ganus has not met the burden of proof which was on him in this case.

It follows that the judgment appealed from is due to be reversed and the cause remanded to the trial court.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON and COLEMAN, JJ., concur.