In re William A. HANSEN, Debtor.

William A. HANSEN and Beth K. Hansen, Plaintiffs–Appellees,

v.

The BOROUGH OF SEASIDE PARK, et al., Defendants–Appellants.

Civ. No. 93–5626 (GEB).
Bankruptcy No. 93–33346 (WHG).
Adv. No. 93–3531 (WHG).

United States District Court,
D. New Jersey.

March 11, 1994.

Edward Basaman, Law Offices of Edward Basaman, Seaside Park, NJ, for plaintiffs-appellees.

Bray B. Barnes, Picco Mack Herbert Kennedy Jaffe & Yoskin, Trenton, NJ, for defendants-appellants Borough of Seaside Park, Honorable John J. Peterson, Jr., members of Seaside Park Borough Council, Seaside Park Planning Bd., Seaside Park Planning, Bldg., and Zoning Office, and Robert Emig.

Steven F. Nemeth, Berry, Kagan & Sahradnik, Toms River, NJ, for defendants-appellants Ocean County Dept. of Const. Inspection and Herb Golom.

BROWN, District Judge.

## I. INTRODUCTION

This matter comes before the Court on appeal from an Order of the bankruptcy court dated November 17, 1993, wherein that court denied defendants-appellants' motion to dismiss an adversary proceeding commenced by the debtors-plaintiffs-appellees' on October 1, 1993, for lack of subject matter jurisdiction. For the reasons set forth below, this Court concludes that the bankruptcy court

lacked subject matter jurisdiction to hear the adversary proceeding at issue and will, therefore: (1) reverse the decision of the bankruptcy court and (2) dismiss the adversary proceeding at issue in its entirety for lack of subject matter jurisdiction.

## II. BACKGROUND

Debtors-appellees William A. Hansen and Beth K. Hansen (husband and wife) co-own and operate several commercial and residential properties located in The Borough of Seaside Park, New Jersey. One of the properties owned and operated by the Hansens in this area is the Oceanside Motel, located at 10 Stockton Avenue, Seaside Park, New Jersey. Significant to this appeal, the debtors-appellees maintain that since 1987, they have rented dwelling units at the Oceanside Motel to clients of the Ocean County Board of Social Services (the "OCBSS"). In June of 1993, debtor-appellee William Hansen filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 301 *et seq.*, in the United States Bankruptcy Court for the District of New Jersey. The Oceanside Motel became a part of the debtors' Chapter 11 estate.[1]

In August of 1993, debtor-appellee William Hansen discovered that he had not yet received his renewed 1993 mercantile license for the Oceanside Motel.[2] Consequently, on August 12, 1993, debtor-appellee William Hansen, through his attorney, requested that said license be issued. Four days later, on August 16, 1993, appellant Emig notified William Hansen of certain discrepancies in the number and types of units constructed on the property discovered in the course of a routine investigation of the premises,[3] but issued the Hansens a temporary mercantile license pending further investigation. Thereafter, on October 1, 1993, appellant Emig notified the debtors-appellees that the subject premises apparently had been converted without first obtaining the requisite approval from borough officials and were in violation of numerous municipal ordinances and codes. Based upon these findings, appellant Emig notified the debtors-appellees that their mercantile license would not be renewed for the 1994 year and further ordered debtors-appellees to make the premises comply with the approved site plan and that such action be commenced before November 1, 1993.

On October 1, 1993, debtors-appellees William and Beth Hansen filed a verified complaint in the bankruptcy court against: The Borough of Seaside Park ("Seaside Park"), its Mayor John J. Peterson, Jr., and the members of the Seaside Park Borough Council; the Seaside Park Planning Board (the "Planning Board"); the Seaside Park Planning, Building, and Zoning Office (the "Zoning Office"); the Ocean County Department of Construction Inspection (the "OCDCI"); Robert Emig; and Construction Code Sub–Official Herb Golom employed by the OCDCI. In this action, brought as an adversary proceeding, the debtors-plaintiffs maintained that they had been subjected to a continuing scheme of harassment, discrimination, and retaliation by the above-named defendants since 1989 because they were renting housing units to clients of the OCBSS.[4]

1. Although Beth Hansen was not listed as a joint debtor in the June 3, 1993 bankruptcy petition filed by William Hansen, because she was the co-owner of certain properties made a part of the bankruptcy estate, the bankruptcy court extended William Hansen's Chapter 11 protection to Beth Hansen with respect to those holdings.

· It is also worth noting that debtor-appellee William Hansen continues to act as a debtor-in-possession of these properties, as no Chapter 11 Trustee has been appointed by the bankruptcy court.

2. Review of the record presented to this Court and the written submissions of the parties reveals that debtor-appellee William Hansen had submitted his renewal application to the Zoning Board on April 20, 1993. An inspection of the premises was then initially scheduled for May 21, 1993. Due to a cancellation by William Hansen, however, the premises were not inspected until June 23, 1993. Upon inspection, defendant-appellant Seaside Park Building/Zoning Officer Robert Emig discovered that the property had been converted into efficiency apartments without first obtaining the requisite approval from borough officials.

3. *See supra* note 2.

4. Interestingly, in support of their claim, the debtors-appellees rely on an assertion that since a significant number of the OCBSS's clients are members of minority groups, the debtors-appellees' denial of the mercantile license at issue constitutes discrimination and a violation of the

With respect to the relief sought, the debtors-plaintiffs petitioned the court for immediate temporary injunctive relief "staying all administrative and municipal proceedings arising out of the facts and circumstances alleged in the complaint." *See* V. Compl. at 27 (Immediate Injunctive relief Requested). The debtors-plaintiffs further sought, *inter alia*, preliminary injunctive relief in the form of a writ of mandamus compelling the issuance of permanent mercantile licenses for their Seaside Park properties as well as an award of compensatory, consequential, and punitive damages. *See id.* at 26–27.

By Order dated October 4, 1993, the bankruptcy court issued a Temporary Restraining Order staying "[a]ll administrative and municipal proceedings arising out of the facts and circumstances alleged in [the debtors-appellees'] complaint currently pending before the Seaside Park Municipal Court, and the Ocean County Board of Construction Appeals." *See* Order dated October 4, 1993. The bankruptcy court further ordered the parties appear on October 12, 1993, for a hearing on the debtors-appellees' application for a writ of mandamus. *See id.* Thereafter, at the October 12, 1993 hearing, the court ordered the stays of the municipal and administrative proceedings be continued:

> until such time as the parties appear before the [c]ourt to be heard on [debtors'] application for a preliminary injunction determining whether the actions taken by the Seaside Park Zoning Officer and the Ocean County Sub–Code Official were dis-

Civil Rights Act. Because this Court finds that the bankruptcy court lacked subject matter jurisdiction to hear the instant adversary proceeding, the Court need not address this issue.

5. For simplicity, throughout this opinion, the Court will refer to this group of defendants as the "Seaside Park defendants."

6. The following day, on November 9, 1993, defendants-appellants OCDCI and Golom filed a similar motion to dismiss. This motion, originally scheduled for November 29, 1993, was subsequently adjourned by the bankruptcy court without a return date. This raises the issue of whether these defendants have standing to join in this appeal. The Court need not address this issue, however, in light of its finding that the bankruptcy court lacked subject matter jurisdiction to hear the instant adversary proceeding.

criminatory and for the purpose of interfering with rights secured . . . by the Federal Civil Rights Act.

*See* Order dated October 12, 1993. The bankruptcy court further: (1) granted debtors-appellees' request to file a supplemental verified complaint which was subsequently filed on October 22, 1993; and (2) ordered the parties to return on November 18, 1993, for a hearing on debtors-appellees' application for preliminary injunctive relief. *See id.*

On November 8, 1993, defendants-appellants Seaside Park, Mayor Peterson, the members of the Borough Council, the Planning Board, the Zoning Office, and Emig [5] filed a motion to dismiss the adversary proceeding for lack of subject matter jurisdiction or, in the alternative, to strike the supplemental complaint, and for the imposition of sanctions.[6] In a hearing conducted on November 15, 1993, the bankruptcy court denied the Seaside Parks defendants' motion.[7]

As a result of the foregoing, the Seaside Park defendants filed an initial notice of appeal on November 19, 1993. This notice was returned due to the fact that at this point, no written Order had been entered on the docket relating to the November 15, 1993 hearing. On November 23, 1993, the debtors-plaintiffs filed a motion to have the bankruptcy court [8]: (1) make additional findings of fact pursuant to Bankruptcy Rule 7052(b) and (2) strike the original notice of appeal.[9] Thereafter, by Order dated November 17, 1993, entered on the docket on November 29, 1993, the bankruptcy court formally denied the Seaside

7. The bankruptcy court also issued an oral preliminary injunction against the Seaside Park defendants as well as defendants OCBCA and Golom. To date, however, no order or written decision has been issued by the lower court with respect to the issuance of the preliminary injunction. Consequently, the issuance of the preliminary injunction is not made part of this appeal.

8. At some point between the November 15, 1993 hearing and November 23, 1993, this action was transferred to the Honorable Kathryn Fergusen.

9. At this point, debtors-plaintiffs claim to have not known that the Seaside Park defendant's notice had been rejected. These motions were subsequently withdrawn without prejudice on January 18, 1994, due to this appeal.

Park defendants' motion to dismiss and for sanctions. The Seaside Park defendants then refiled their notice of appeal on December 1, 1993. Thereafter, by letter dated January 10, 1994, the OCDCI and Golom joined in this appeal.[10]

### III. DISCUSSION

#### A. THIS COURT'S SUBJECT MATTER JURISDICTION

■ As an initial matter, the debtors-appellees assert that this Court lacks subject matter jurisdiction to hear this appeal at this time. As noted above, the Seaside Park defendants filed their initial notice of appeal four days after the bankruptcy court orally denied their motion and two days after the bankruptcy court apparently signed the written Order. The fact that the Order was not formally entered on the docket until November 29, 1993, six days after the débtors had filed follow-up motions with the bankruptcy court which have since been withdrawn and ten days after the Seaside Park defendants' initial notice of appeal was filed, should not now act as a bar to this Court hearing this appeal. Moreover, in light of the dispositive nature of the subject matter of the instant appeal, this Court concludes that it has jurisdiction to decide the instant appeal. *See In re Amatex Corp.*, 755 F.2d 1034, 1039 (3d Cir.1985) ("The concept of 'finality' for purposes of appellate jurisdiction should be viewed functionally.... In this regard, we have consistently considered finality in a more pragmatic and less technical way in bankruptcy cases than in other situations.... 'Considerations unique to bankruptcy appeals have ...' led us to interpret finality more broadly in the bankruptcy context than in other areas." (internal citations omitted)).

#### B. STANDARD OF REVIEW

■ In an appeal from a bankruptcy court's decision, the district court applies two different standards of review. The district court reviews factual findings of the bankruptcy courts under a clearly erroneous standard. *See In re Sharon Steel Corp.*, 871 F.2d 1217, 1222 (3d Cir.1989); Bankr.Rule 8013. A bankruptcy court's conclusions of law, however, are subject to *de novo* review. *See In re Sharon Steel Corp.*, 871 F.2d at 1222; Bankr.Rule 8013.

#### C. THE PROPRIETY OF THE BANKRUPTCY COURT'S EXERCISE OF JURISDICTION OVER THE DEBTORS-PLAINTIFFS-APPELLEES' CIVIL RIGHTS ACTION

■ In addressing the issue of subject matter jurisdiction, the bankruptcy court stated:

> I think this Court does not have jurisdiction to determine whether or not there is harassment. However, I think that this is essentially a non-co[re] matter and that conceivably affect the outcome of the case....
>
> ....
>
> The difficulty here which we do face is the provisions of [§] 362. However, I think the municipality and the county are caught in some[what] of a bind because if the [c]ourt has jurisdiction to hear the [§] 1983 case which is a harassment case, it would be meaningless to have such jurisdiction if the [c]ourt then turned around and said, oh, yea, but as long as you call it exercise of police power then the [b]ankruptcy [c]ourt can't do anything about it....
>
> I'm not going to dismiss this case. I will determine that there is non-co[re] jurisdiction.

Tr. of Hearing dated November 15, 1993, at 14–15. Such a ruling is contrary to the prevailing law. Accordingly, the Court will reverse the decision of the bankruptcy court.

■ Pursuant to the express terms of 28 U.S.C. § 157(b)(5),[11] bankruptcy courts do

---

10. *But see supra* note 6.

11. Section 157(b)(5) provides:
   The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bank-ruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.
   28 U.S.C. § 157(b)(5) (West 1993).

not have subject matter jurisdiction over personal injury tort causes of action and wrongful death claims. *See Vinci v. Town of Carmel (In re Vinci),* 108 B.R. 439, 441–42 (Bankr.S.D.N.Y.1989). Although the court in *Vinci* found that this statutory exemption did not apply to cases "without trauma or bodily injury,"[12] *see id.* at 442 (citing *Perino v. Cohen (In re Cohen),* 107 B.R. 453 (S.D.N.Y. 1989), this Court is persuaded by the analysis set forth in *Boyer v. Balanoff (In re Boyer),* 93 B.R. 313 (Bankr.S.D.N.Y.1988), wherein the court reasoned:

> [T]he similar language of 42 U.S.C.A. §§ 1983 and 1985 ... sounds in tort and each statute provides a remedy that "encompasses a broad range of potential tort analogies, from injuries to property to infringements of individual liberty.... [In *Wilson v. Garcia,* 471 U.S. 261 [105 S.Ct. 1938, 85 L.Ed.2d 254] (1985), t]he Supreme Court held ... that § 1983 actions are best characterized as personal injury actions for the purpose of choosing [the] applicable statute of limitations because "[i]n the broad sense, every cause of action under § 1983 which is well founded results from personal injuries." *Id.* at 278 [105 S.Ct. at 1948] [ (citation omitted).] Thus, while §§ 1983 and 1985 are not general tort statutes ... they create a species of tort liability for the deprivation of federal statutory and constitutional rights by a person acting under color of law....
>
> The term "personal injury tort" embraces a broad category of private or civil wrongs or injuries for which a court provides a remedy in the form of an action for damages, and included damage to an individual's person and any invasion of personal rights, such as libel, slander and mental suffering....[13]
>
> The Court, acknowledging the lack of legislative history, finds the statute and the Code silent on any repudiation or limitation [on a] broad reading of "personal injury tort" within the meaning of 28

U.S.C. § 157(b)(5).... Accordingly, the Court construes § 157(b)(5) to encompass federal and state causes of action for all personal injury tort claims, including those exclusively commenced under §§ 1983 and 1985.

93 B.R. at 317–18 (internal citations omitted). This broad interpretation is further supported by a recent decision issued by the United States District Court for the Eastern District of Virginia wherein the court held: "[T]he personal injury, civil rights/tort action is not a non-core proceeding that the bankruptcy court may hear under 28 U.S.C. § 157(c)(1). Congress has mandated trial in the district court of personal injury tort actions, 28 U.S.C. § 157(b)(5), and thereby specifically excepted such actions from bankruptcy court jurisdiction." *Williamson v. Patterson (In re Patterson),* 150 B.R. 367, 368 (E.D.Va.1993). Accordingly, the Court finds that the bankruptcy court lacked subject matter jurisdiction to hear and determine the merits of plaintiff's civil rights complaint.

■ Furthermore, even if this Court were to find *Vinci* and *Cohen* persuasive, it is clear that the bankruptcy court lacked jurisdiction to hear an argument regarding the possible injunction of a local government's exercise of its police powers. *See* 11 U.S.C.A. §§ 362(b)(4) & (5) (West 1993). As stated by the Third Circuit in addressing the applicability of the automatic stay provision under section 362 to an action by the government to recover cleanup costs under CERCLA from debtor's hazard waste site:

> Congress recognized ... that the stay provision was particularly vulnerable to abuse by debtors improperly seeking refuge under the stay in an effort to frustrate necessary government functions. To combat the risk that the bankruptcy court would become a sanctuary for environmental wrongdoers, among others, Congress en-

---

12. Review of the *Vinci* decision reveals, however, that the sole reason it ruled the way it did was that it felt bound by the *Cohen* decision. *See Vinci,* 108 B.R. at 442. The Court is unpersuaded by the analysis set forth in both of these bankruptcy court decisions.

13. It is worth noting that in their verified complaint, plaintiffs seem to also be asserting a cause of action for slander against several of the Seaside Park defendants. *See* V. Compl. ¶¶ 22–31 (Part IV—Background Section).

acted the police and regulatory power exception to the automatic stay.

*See United States v. Nicolet, Inc.,* 857 F.2d 202, 207 (3d Cir.1988) (citation omitted). The Court finds this statement applicable to the case at hand and, therefore, concludes that the bankruptcy court lacked subject matter jurisdiction to preside over an adversary proceeding where the debtor is seeking to enjoin the municipality's exercise of its police and regulatory power. *See United States v. Wheeling–Pittsburgh Steel Corp.,* 818 F.2d 1077, 1086 (3d Cir.1987) ("Congress expressly provided that the automatic stay provisions do not apply when the government is seeking to enforce its police or regulatory power." (citation omitted)); *The Briarcliff v. Briar Tenants Assoc. (In re The Briarcliff),* 15 B.R. 864, 867 (D.N.J.1981) ("It's not the province of the bankruptcy court to undertake the role of local government agencies. The bankruptcy court is only empowered to preserve the assets of a bankruptcy estate and cannot authorize noncompliance with local law." (citation omitted)).

In light of the foregoing, the Court will reverse the decision of the bankruptcy court and dismiss the adversary proceeding at issue in its entirety for lack of subject matter jurisdiction.

## IV. CONCLUSION

Because this Court finds that the bankruptcy court lacked subject matter jurisdiction to hear the adversary proceeding commenced by the debtors-plaintiffs-appellees' on October 1, 1993 (Adversary No. 93–3531 (WHG)), the decision of the bankruptcy court is hereby REVERSED and the adversary proceeding at issue is hereby DISMISSED in its entirety for lack of subject matter jurisdiction.