BOZANT et al. v. BANK OF NEW YORK.

No. 281, Docket 20199.

Circuit Court of Appeals, Second Circuit.

July 8, 1946.

---

[14] This decision was handed down after the District Court, in the instant case, had rendered its judgment.

788

Harry Rodwin, Goldwater & Flynn, and Minna F. Kassner, all of New York City (James L. Goldwater, of New York City, of counsel), for appellants.

Harold H. Levin and Reeves, Todd, Ely & Beaty, all of New York City (Joseph M. Proskauer and David Cohen, both of New York City, of counsel), for appellee.

William S. Tyson, Sol., and Bessie Margolin, Asst. Sol., both of Washington D. C., Irving Rozen, Regional Atty., of New York City, and Morton Liftin and Eugene Green, Attys., U. S. Department of Labor, both of Washington, D. C., for Admr., Wage and Hour Div., U. S. Department of Labor, as amicus curiae.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The plaintiffs appeal from a judgment, summarily dismissing their complaint in an action for overtime, under § 16(b) of the Fair Labor Standards Act of 1938, § 216(b) of Title 29, U.S.C.A. They are twenty-two "maintenance" or "service" employees, who took care of a building, owned by the defendant at 48 Wall Street, New York City; and the only question involved is whether they are within the Act. The defendant moved for summary judgment upon affidavits of the superintendent of the building, of its comptroller, and several of the tenants. The plaintiffs answered by affidavits; and the following facts appeared. The bank itself occupies fifty per cent of the rentable space in the building, and leases the remainder to other tenants. Of these, about sixteen per cent. are firms doing a banking business, which may be taken as the same as that of the bank; six per cent are brokers; and about twenty per cent are lawyers. The substantial question is whether the defendant and the other banking firms are engaged in the "production of goods for commerce," under § 203(j) of Title 29. The plaintiffs do not assert that any ordinary chattels are manufactured, produced or handled in the building; and the only articles which can fall within the definition of "goods" under § 203(i) are stocks, bonds, commercial paper of all sorts, letters, legal documents, advertising pamphlets, papers and records and the like. Occasionally, the Bank "multigraphs" a letter for its customers, and runs off a hundred copies, some of which it sends out of the state; also it prepares and sends out bulletins, and at times brochures, announcements, pamphlets, and the like. In addition to these activities, to an undisclosed extent it prepares and works upon certificates of stocks, bonds and other securities; and it prepares cheques, notes, drafts, and other commercial paper of all kinds. Finally, it endorses, stamps, wraps in bulk, and ships outside the state, many millions of dollars worth of stocks, bonds and other securities. The judge concluded that no manufacturing, production or handling of "goods for commerce" went on in the building; and that therefore the bank

was not engaged in "the production of goods for commerce" under § 203(j); and it followed that the plaintiffs, as "maintenance" or "service" employees, were not engaged in an "occupation necessary to the production thereof."

On June 11, 1945, the Supreme Court decided two cases, in general outline similar to the case at bar: 10 East 40th Street Building, Inc. v. Callus, 325 U.S. 578, 65 S.Ct. 1227, 89 L.Ed. 1806, and Borden Co. v. Borella, 325 U.S. 679, 65 S.Ct. 1223, 89 L.Ed. 1865. Each concerned a large office building in the City of New York, occupied by many tenants. In the first the owner of the building carried on no business of its own; in the second the owner, the Borden Company, occupied more than half the space for its executive offices. Each case had come up from us and we had held the "maintenance" employees of each to be within the Act; the Supreme Court disagreed as to the first case, but agreed as to the second; the change being due to a shift in the votes of Douglas Frankfurter and Jackson, JJ. In 10 East 40th Street Building, Inc. v. Callus, supra, many of the tenants were executives of companies which were engaged in the "production of goods for commerce," whose relation to production was therefore the same as was that of those executives of the Borden Company who occupied the Borden Building. On the other hand some of the tenants in the 40th Street building were only sales agents, or in other relations incidental to the production of goods; and these we had counted with executives. However, we do not find in the prevailing opinion any reliance upon a difference between executives and other agencies; the decisive distinction was that the Borden Company owned the building and itself made use of it as part of its production of goods for commerce: i. e. milk. This appears in the following passage (325 U.S. at pages 583, 584, 65 S.Ct. at page 1230, 89 L.Ed. 1306): "an office building exclusively devoted to the purpose of housing all the usual miscellany of offices has many differences in the practical affairs of life from a manufacturing building, or the office building of a manufacturer." The court also distinguished the situation before it from A. B. Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638, because no actual physical manufacture went on in the 40th Street building; and in Baldwin v. Emigrant Industrial Savings Bank, 2 Cir., 150 F.2d 524, we regarded that as the basis for a reconciliation of the two decisions. Therefore, in the case at bar, if the Bank does produce "goods" within the building, as we shall show that it does, both A. B. Kirschbaum Co. v. Walling, supra, and Borden Co. v. Borella, supra, support the plaintiffs' claims: with the proviso, of course, that the proportion of "goods" produced in the building is enough to color the activities of the employees as a whole.

In deciding that issue we must take against the defendant every question as to which there is the least doubt, for the appeal is from a summary judgment. Some of the activities which went on, we agree should on no theory be counted. A lawyer who in the course of his practice writes letters, or draws deeds or wills, or prepares briefs and records, is not on that account within § 203(j); and the same is true of the correspondence of a broker and of a banker. The definition of "goods" in § 203(i) might literally go so far even as that; but it would be unreasonable to the last degree to suppose that Congress meant to cover such incidents of a business whose purpose did not comprise the production of "goods" at all. Indeed, were it otherwise, the Act would sweep into its maw every business, however local, which manufactured nothing whatever, merely because it was carried on by correspondence, which is the case with all business. The preparation of advertisements, brochures, pamphlets and other advices mailed out to customers, we cannot pass upon on this record. There are businesses in which similar activities take on immense proportions: illustrated and illuminated books and booklets go out in great numbers and of most substantial size. That of itself may be a production of "goods," though it be only auxiliary to a business which involves no other production. We leave this element of the case to be developed on the trial, even though the Bank has not gone in for

anything comparable in size to what we have just mentioned. Last—and most important for the case before us—of the Bank's activities is the preparation or execution of commercial paper, whether documents of permanent investment, like shares of stock or bond issues, or short term obligations, like negotiable notes, or documents which are, strictly speaking not obligations at all, but bills of lading, and the like. All these the law is disposed to think of, not as records of rights of action, but as the very rights themselves. Bonds have never been considered only as evidences of obligation; from the earliest times they have been treated as the very obligations, and that notion persists. Bacon v. Hooker, 177 Mass. 335, 337, 58 N.E. 1078, 83 Am.St. Rep. 279; Blackstone v. Miller, 188 U.S. 189, 206, 23 S.Ct. 277, 47 L.Ed. 439; United States Fidelity & Guaranty Co. v. Riefler, 239 U.S. 17, 25, 36 S.Ct. 12, 60 L.Ed. 121. Bills of exchange, negotiable notes and most commercial paper are also usually treated as "specialties," and in this respect assimilated to bonds. Williston on Contracts, § 1890. For some purposes shares of stock and bills of lading are in the same class. Restatement of Conflicts of Laws, § 53, §§ 103 and 104(3). It by no means unduly strains § 203(j) to regard the preparation, execution or other validation of such documents as the actual "production of goods." "Goods" in most senses they are, quite as truly as ordinary chattels, and § 203(i), it must always be remembered, was amended in Congress to go beyond "wares, products, commodities, merchandise, or articles," and in addition to include "subjects of commerce of any character." Western Union Telegraph Co. v. Lenroot, 323 U.S. 490, 65 S.Ct. 335, 89 L.Ed. 414, does not stand in the way of this conclusion; the difficulty there was that the telegrams, taken as documents, were not "shipped" across a state line; but of the telegrams themselves the court said: "We think telegraphic messages are clearly 'subjects of commerce' and hence that they are 'goods' under this Act, as alleged in the complaint," (323 U.S. at pages 502, 503, 65 S.Ct. at page 341, 89 L.Ed. 414). Nor is it necessary that the whole document shall be prepared in the building. "Production" as defined in § 203(j) covers "in any other manner worked on," and to execute, or indorse, or in any other way to validate, an incomplete document of the kind we are considering is to work on it; indeed that is the only work upon it that gives it value; until then it is merely a scrap of paper. Again we may take recourse to Western Union Telegraph Co. v. Lenroot, supra, 323 U.S. at page 503, 65 S.Ct. at page 342, 89 L.Ed. 414: "We are clear that 'handled' or 'worked on' includes every kind of incidental operation preparatory to putting goods into the stream of commerce."

To recapitulate. In so far as the Bank's business consists of preparing, executing or validating bonds, shares of stock, commercial paper, bills of lading and the like, it is engaged in "producing goods for commerce"; and included in this are any activities necessary to the effectiveness of the documents even though, as an example, it be no more than registering a share or a series of bonds. On the other hand the mere writing of letters or the drawing of papers, which have no value of their own except as records, are not to be counted. As to advertisement brochures, pamphlets and the like, we leave the case open. The fullest disclosure should be made, and care should be taken to rule out nothing on the theory that we have held it irrelevant, unless it be patently frivolous. In conclusion we cannot avoid observing that the case is another mistaken effort to save time by an attempt to dispose of a complicated state of facts on motion for summary judgment. This is especially true when the plaintiff must rely for his case on what he can draw out of the defendant. Arnstein v. Porter, 2 Cir., 154 F.2d 464. It appears to be somewhat difficult to persuade the district courts of this; but we are satisfied that it is true.

Judgment reversed; cause remanded for trial.