**PETNEL v. AMERICAN TEL. & TEL. CO. et al.**

United States District Court
S. D. New York.

July 17, 1952.

Schuman, Giaccone, Dorn & Marcus (Francis X. Giaccone, New York City, of counsel), for plaintiff.

Davis, Polk, Wardwell, Sunderland & Kiendl (S. Hazard Gillespie, Jr., New York City, of counsel), for defendants.

McGOHEY, District Judge.

The defendants moved, pursuant to Rule 56 of the Federal Rules of Civil Procedure 28 U.S.C.A., for summary judgment dismissing the complaint on the ground that from the pleadings, the plaintiff's answers on examination before trial and various documents therein authenticated, it is clear that "no triable issue [is] presented." I disagree.

The plaintiff, who holds a patent for a "finger wheel" to be used on a dial telephone, alleges that for six years preceding this suit he "has been and still is engaged in the business, trade and commerce of manufacturing and selling" his patented device which is called "Petnel Sani-Dial;" that the defendants, by means of a conspiracy in violation of the Antitrust laws, have restrained trade and commerce in the manufacture and sale of telephone apparatus, including the plaintiff's device, in that they have established the defendant Western Electric as the sole and exclusive manufacturer and marketer of such apparatus; that they have thus unlawfully "deprived the plaintiff of the only substantial outlet for the sale of Petnel Sani-Dials;" that by reason of the foregoing "the value of the plaintiff's letters patent have been reduced and his business of selling Petnel Sani-Dials has been limited and curtailed."

He seeks damages (trebled) totaling 45 million dollars and extensive injunctive relief including virtual dismemberment of the Bell Telephone System.[1]

It appears from the plaintiff's testimony on examination before trial that in 1936 he entered into an agreement with Automatic Electric Company of Chicago whereby in consideration of $1,000 he agreed in part as follows:

1. PETNEL hereby grants and agrees to grant to AUTOMATIC and/or its nominees, a license, including the right to grant sublicenses (except as hereinafter specified), under the said United States patent and any reissues or extensions thereof, to manufacture, use, and sell Dial Telephone Finger Wheels embodying the invention covered by said patent.

2. The parties further expressly agree that the license herein granted to AUTOMATIC shall be exclusive with the exception that PETNEL reserves the right to grant a non-exclusive license to the American Telephone and Telegraph Company or to the Western Electric Company, Inc., for themselves and their associated companies comprising the Bell System, for the manufacture and use by themselves

---

1. There is presently pending in the U. S. District Court for New Jersey an action by the United States for substantially the same injunctive relief.

of Dial Telephone Finger Wheels as covered by said patent.

3. It is further understood and agreed by and between the parties hereto, that should AUTOMATIC sell Finger Wheels, as covered by said patent, to the American Telephone and Telegraph Company, the Western Electric Company, Inc., or any of the companies comprising the Bell System, that sales to said companies, and to said companies only, shall be subject to the payment by AUTOMATIC to PETNEL, or his nominee, of a royalty equivalent to ten cents ($0.10) on each Finger Wheel so sold to said companies, such royalty payments to be subject to revision from time to time by mutual agreement of the parties.

The defendants contend that by this agreement which is still in effect that plaintiff divested himself of the very right—to sell his patented device—which he now says the defendants have violated. Thus they argue that even if it be conceded, as they do, but only for this motion, that they have unlawfully conspired as alleged, it clearly appears that such conspiracy has not violated and could not possibly violate any right which the plaintiff possesses.

Paragraph 3 of the agreement with Automatic Electric entitles the plaintiff to a royalty on each finger wheel Automatic may sell to either of the defendants or to any of the companies comprising the Bell System. Thus the plaintiff appears to have some right which the assumed conspiracy may violate. The defendants argue that this is purely illusory. Their papers allege that the price of finger wheels purchased from Western Electric has ranged from a low of nine cents to a high of twelve cents. Thus, it is argued, Automatic could never compete with Western Electric because it would have to price its wheels at a figure which would always exceed Western Electric's by at least the amount of the royalty. But, that argument merely points up several issues of fact which may not be disposed of summarily. Moreover, in the agreement with Automatic the plaintiff specifically reserved the right to sell a nonexclusive license to the defendants to manufacture the plaintiff's finger wheel for themselves and their associated companies in the Bell System. It is true that the defendants have consistently stated that their reason for not buying a license from the plaintiff is that in the opinion of their experts the plaintiff's device was not satisfactory. But there again arises an issue of fact because it is the plaintiff's claim that it was the alleged conspiracy and not lack of merit in his device which caused the defendants and the associated companies of the Bell System to refuse to buy it.

It is urged that the court and the officials of the defendant companies ought not be subjected to protracted discovery proceedings and long trials in a case which is said so clearly to lack real issues of fact. It is indeed true that cases of this nature put a terrible burden on courts and litigants as well. But until some new system is devised to handle such controversies courts will have to do the best they can. In any event, it is clear in this Circuit, at least, that the problem of overcrowded calendars is not to be solved by summary disposition of issues of fact fairly presented by the pleadings.[2] There is, of course, ample power to protect litigants from abuse of the discovery procedures if that should occur.

The motion for summary judgment is denied.

2. Bozant v. Bank of N. Y., 2 Cir., 156 F.2d 787, 790; Doehler Metal Furniture Co. v. U. S., 2 Cir., 149 F.2d 130, 135–136.