SAMUEL, Judge.
Plaintiff filed this suit against American Thrift & Finance Plan, Inc. for $1,843.39, as liquidated damages, and for attorney’s fees under the Fair Labor Standards Act of 1938.[1] Her claim is based on defendant’s failure to pay her time and one-half for alleged work by her in excess of 40 hours per week in violation of Section 207 of that act.
Defendant answered, denying liability, and denying the Fair Labor Standards Act had any application to the controversy between the litigants.
After a trial on the merits, judgment was rendered in favor of defendant, dismissing plaintiff’s suit at her cost. Plaintiff has appealed from that judgment.[2]
Imprimis, we note Section 216(b) of the act provides in part: “Action to recover such liability [resulting from violations of the provisions of Sections 206 or 207] may be maintained in any court of competent jurisdiction by any one or more employees . ” Under that provision both state and federal courts have concurrent jurisdiction and a plaintiff-employee may sue in either.[3]
In pertinent part, the statutory provision under which plaintiff sues, as it existed while plaintiff worked for defendant, read as follows:
. ., no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.” [4]
*395 At the outset it is necessary to make clear Congress did not exercise its full power over interstate commerce so as to cause the Fair Standards Act to apply to activities which merely “affect commerce.” On the contrary, the act applies to “employees . engaged in commerce or in the production of goods for commerce . . . ”[5] Moreover, even if an employer is engaged in commerce, the question of coverage under the act is determined by the activities of the particular employee concerned.[6]
Plaintiff worked for defendant from November 10, 1971 to June, 1973 as an office employee. Defendant is a loan company organized under Louisiana law. It operates five branches, all within the State of Louisiana. During her employment, plaintiff worked at two of these branches, and performed her services in each. Her duties involved typing, greeting customers as they came in the office, answering the telephone, collecting payments brought in the office, and other similar clerical services. Her contact with the mails was limited to typing envelopes to mail collection notices. Her duties did not involve taking interstate telephone calls, but defendant admits she may have done so occasionally. She did not travel across state lines.
Defendant makes no loans across state lines; it lends only to Louisiana residents. It does not discount or pledge any of its notes or security, and borrows all needed working capital and other funds from Louisiana banks. It prepares its own truth in lending forms, promissory notes, mortgages, and other business forms and has them printed locally. It provides credit life insurance on some of its loans, and this insurance is written by a Florida corporation. However, all defendant’s dealings are with a local insurance agency which acts as intermediary between defendant and the Florida insurer. Consequently, all payments by defendant for credit life insurance premiums are made in Louisiana. The same basic arrangement exists with regard to hospital insurance policies made available to employees as a fringe benefit.
Defendant’s stock holders are all Louisiana residents. It has no office operations outside Louisiana, and it does not secure its loans with property or other collateral outside the state. Defendant’s advertising is restricted to Louisiana; it does not attempt to obtain business outside the state. It occasionally purchases advertising material from other states, but it is all used locally. The majority of its advertising is conceived and printed in Louisiana. It has made direct mail solicitation of loans, but such solicitations have been restricted to the metropolitan New Orleans area. Only responses to these solicitations by Louisiana residents are accepted by the company.
Defendant’s employees do not prepare loan authorizations, commercial paper, promissory notes, bills of lading, or any other similar documents for transmittal or use outside Louisiana. In addition, its employees do not prepare life insurance policies for transmission to another state. Defendant’s employees occasionally perform “skip trace” operations to locate debtors who have disappeared, and this procedure requires the use of telephones and occasionally the mail. On some occasions when a debtor has left the state, defendant makes use of a skip trace organization in another state and it does use attorneys in other states to collect debts from persons who have left the state without paying. However, defendant’s employees do not leave the state when they attempt to locate debtors who have disappeared.
The question presented is whether plaintiff was engaged in commerce or whether *396 she was engaged in the production of goods for commerce so as to bring her within the provisions of the act. The test established by the United States Supreme Court to determine whether an employee is “engaged in commerce” under the act has been set forth graphically in McLeod v. Threlkeld,[7] as follows:
“The test under this present act, to determine whether an employee is engaged in commerce, is not whether the employee’s activities affect or indirectly relate to interstate commerce but whether they are actually in or so closely related to the movement of the commerce as to be a part of it. Employee activities outside of this movement, so far as they are covered by wage-hour regulation, are governed by the other phrase, ‘production of goods for commerce.’ . . . it is the work of the employee which is decisive.”
As defendant’s business is conducted on an intrastate basis only, its contacts with interstate commerce are at best tangential, and for the purposes of the Fair Labor Standards Act not only are its employees not “engaged in commerce”, but it can hardly be said the business of defendant “affects” interstate commerce to any substantial degree. With particular reference to plaintiff’s duties, her strictly in-office activities were totally intrastate in nature, with the exception of the preparation of envelopes with collection notices for mailing within the state of Louisiana and the placing of occasional long distance telephone calls in connection with company business. Even if defendant were engaged in interstate commerce, the activities performed by plaintiff as her employment duties would not be sufficient to place her within the ambit of the act.[8]
In addition, it is clear plaintiff was not engaged in the preparation of goods for interstate commerce. It has been held employees of a lender who prepare and transmit across state lines documents which are considered property in themselves, such as promissory notes, bills of exchange, bonds and similar instruments are engaged in preparation of goods for interstate commerce.[9] On the other hand, employees who merely prepare and send in interstate commerce items of a non-property nature, such as reports and memoranda, are not in interstate commerce.[10] Even if some of the notices placed in envelopes by plaintiff did cross state lines, such activity would not constitute preparation of goods for interstate commerce and would not place plaintiff under the provision of the act.[11]
Finally, plaintiff makes oblique reference to an exception to the general rule which provides that when some of the employer’s operations are considered interstate commerce, all employees in the enterprise are considered covered by the act.[12] Plaintiff’s reference is to the so-called “enterprise concept”, enacted by Congress for the purpose of extending the coverage of the act to employees in the finance industry.[13] However, the very nature of defendant’s business in the present case precludes any consideration of this concept. Defendant has no out of state branches, conducts no out of *397 state “sales”, and is not connected except in some occasional and inconsequential ways with interstate commerce. Consequently, it is not an enterprise engaged in interstate commerce and plaintiff, its employee, is not covered by the act.[14]
For the reasons assigned, the judgment appealed from is affirmed.

AFFIRMED.

. 29 U.S.C.A. § 201, et seq.

. Defendant also filed an exception of prescription, which the trial court referred to the merits and thereafter did not rule thereon. As defendant has neither briefed nor argued prescription, we consider that issue abandoned. Steele v. Ruiz, La.App., 202 So.2d 376 and cases cited therein.

. Freudenberg v. Harvey, D.C.Pa.1973, 364 F.Supp. 1087; Schimerowski v. Iowa Beef Packers, Inc., Iowa 1972, 196 N.W.2d 551; McClanahan v. Mathews, D.C.Ky.1968, 292 F.Supp. 737; Carter v. Hill & Hill Truck Line, Inc., D.C.Tex.1966, 259 F.Supp. 429; Kerness v. Austin Burke, Inc., Fla.App. 1966, 188 So.2d 879; Goettel v. Glenn Berry Mfrs., Inc., D.C. Okl.1964, 236 F.Supp. 884.

.29 U.S.C.A. § 207(a)(1).

. 29 U.S.C.A. § 203(b); Overstreet v. North Shore Corp., 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. 656; Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460; Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638.

. Mabee v. White Plains Publishing Co., 327 U.S. 178, 66 S.Ct. 511, 90 L.Ed. 607; Overstreet v. North Shore Corp., supra, note 5; Walling v. Jacksonville Paper Co., supra, note 5; Kirschbaum Co. v. Walling, supra, note 5. An exception to the general rule will be discussed later in this opinion.

. 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538.

. In Mitchell v. Household Finance Corp., 208 F.2d 667 (3rd Cir. 1953), defendant finance company and subsidiaries conducted business in 490 offices located in 28 states and 8 Canadian provinces. The court concluded, nevertheless, employees who kept and mailed reports at regular intervals to its Chicago office, corresponded on company matters with the Chicago office, and sent checks and drafts back and forth approximately twice a month did not perform services in interstate commerce.

. Bozant v. Bank of New York, 156 F.2d 787 (2nd Cir. 1946).

. Mitchell v. Household Finance Corp., supra note 8; Kelly v. Ford, Bacon & Davis, 162 F.2d 555 (3rd Cir. 1947); Bozant v. Bank of New York, supra, note 9.

. Mitchell v. Household Finance Corp., supra note 8.

. Shultz v. Deane-Hill Country Club, Inc., 310 F.Supp. 272 (E.D.Tenn.1969).

. 29 U.S.C.A. § 203(r).

. See Beneficial Finance Company of Wisconsin v. Wirtz, 346 F.2d 340 (7th Cir. 1965); Wirtz v. Welfare Finance Corporation, 263 F.Supp. 229 (N.D.W.Va.1967).