**Alexis M. HERMAN, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**HOSPITAL STAFFING SERVICES, INC., d/b/a Mid–South Comprehensive Home Health and d/b/a Alternative Care Medical Services and d/b/a All–Care Professional Services, Inc. and d/b/a HSSI Home Care,**

and

**Ron Lusk, Individually and as President of Hospital Staffing Services, Inc.,**

and

**Capital Factors, Inc., d/b/a Capital Healthcare Financing,**

and

**Kenneth A. Welt, Trustee in Bankruptcy for Hospital Staffing Services, Inc., Defendants.**

**No. 99–2165 DV.**

United States District Court, W.D. Tennessee, Western Division.

July 27, 1999.

cited no Code provision that supports such an analysis on the facts of this case.

Brian W. Dougherty, Henry L. Solano, Solicitor of Labor, Jaylynn K. Fortney, Regional Solicitor, U.S. Department of Labor, Office of the Solicitor, Nashville, TN, for Alexis M. Herman, Secretary of Labor, United States Department of Labor, plaintiff.

Peter G. Herman, Tripp Scott, Fort Lauderdale, FL, for Ron Lusk, Individually and as President of Hospital Staffing Services, Inc., defendant.

Lance H. Baker, Ruden McClosky Smith Schuster & Russell, PA, Ft. Lauderdale, FL, for Capital Factors, Inc. dba Capital Healthcare Financing, defendant.

Arthur Halsey Rice, Rice & Robinson, P.A., Miami, FL, for Kenneth Welt, Trustee in Bankruptcy for Hospital Staffing Services, Inc., defendant.

ORDER DENYING DEFENDANTS' KENNETH A. WELT'S, CAPITAL FACTORS, INC., AND RON LUSK'S MOTIONS TO DISMISS

DONALD, District Judge.

Before the court are the motions of Bankruptcy Trustee, Kenneth Welt, Capital Factors, and Ron Lusk asking the court to dismiss Plaintiff's complaint for

lack of subject matter jurisdiction pursuant to FED.R.CIV.P. 12(b)(1) and for failure to state a proper claim under FED.R.CIV.P. 12(b)(6).

The background facts which provide much of the procedural history are not controverted.

In May 1998, Defendant Hospital Staffing Services, Inc. ("HSSI") filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Southern District of Florida.

On February 17, 1999, HSSI closed its business operations in Mississippi and Tennessee.

On February 18, 1999, HSSI closed its business operations in Connecticut, Massachusetts, New Hampshire and Rhode Island.

HSSI failed to pay statutory wages pursuant to sections 6 and 7 of the Fair Labor Standards Act ("FLSA") to its employees for work they performed during the period from January 23, 1999, to February 19, 1999.

The HSSI employees produced and handled initial assessment, admission reports and skilled nurses notes during January and February 1999 (Jan–Feb 99 clinical patient reports). HSSI employees used the clinical patient reports to produce billing documents.

On March 16, 1998, HSSI filed a voluntary petition in Bankruptcy seeking to reorganize under Chapter 11 of the Bankruptcy Code. 11 U.S.C. § 301, 1101 *et seq.* On February 19, 1999, Defendant, Capital Factors, Inc., forced HSSI into a converted Chapter 7 bankruptcy. 11 U.S.C. § 1112. Welt was appointed trustee of HSSI's Chapter 7 bankruptcy estate.

Welt immediately obtained possession of all of HSSI's assets, including the clinical patient reports and billing documents produced and handled by unpaid HSSI employees during the January 23 to February 18, 1999 period.

HSSI and Welt have shipped and/or are preparing for shipment in interstate commerce the Jan–Feb 99 clinical patient reports and billing documents.

On February 25, 1999, the Secretary of Labor exercised her police powers under section 17 of the FLSA by filing a complaint seeking to enjoin the defendants from violating section 15(a)(1) of the FLSA by shipping, selling and/or transporting "hot goods" in interstate commerce. On March 2, 1999, this court issued a Temporary Restraining Order ("TRO") prohibiting the defendants from violating sections 11 and 15(a)(1) of the FLSA.

On March 9, 1999, this court modified the TRO. Upon Welt's motion, this court exercised its equitable powers to permit Welt to ship and transport certain "hot goods" under this Court's supervision and control in order to 1) preserve the value of the "hot goods," and 2) to create a pool of funds with which to remedy the section 15(a)(1) violations. Over the Secretary's objection, the Court permitted Welt to retain in his Trustee account the "tainted" funds collected as a result of the court-ordered shipment of the "hot goods" pending the Court's decision on the preliminary injunction motion.

On March 23, 1999, Welt filed a Motion to Dismiss the complaint for 1) lack of subject matter jurisdiction; 2) failure to state a claim; and 3) in the alternative, for the court to abstain from exercising jurisdiction.

On March 30, 1999, this court conducted a hearing on the Secretary's motion for a preliminary injunction. The Court heard the testimony of various employee witnesses. At the conclusion of the hearing, the court extended the TRO pending the court's decision on the preliminary injunction motion.

## STANDARD OF REVIEW

A motion to dismiss under FED.R.CIV.P. 12(b)(6) requires the Court to construe the complaint in the light most favorable to the

plaintiff, accept all the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief. *Meador v. Cabinet for Human Resources*, 902 F.2d 474, 475 (6th Cir.), *cert. denied*, 498 U.S. 867, 111 S.Ct. 182, 112 L.Ed.2d 145 (1990); *see also Cameron v. Seitz*, 38 F.3d 264, 270 (6th Cir.1994). The Court may not grant such a motion to dismiss based upon a disbelief of the factual allegations contained in the complaint. *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir.1990); *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir.1995) (noting that courts should not weigh evidence or evaluate the credibility of witnesses). The Court must liberally construe the complaint in favor of the party opposing the motion. *Miller*, 50 F.3d at 377. However, the complaint must articulate more than a bare assertion of legal conclusions. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir.1988). "[The] complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id.*

## SUBJECT MATTER JURISDICTION

The Trustee and Capital argue that the district court lacks subject matter jurisdiction because at the relevant time period, the subject entity was a debtor-in-possession under Chapter 11 of the bankruptcy code. See 11 U.S.C. § 1112. The Trustee states that "the [Secretary's] complaint must be dismissed because the Southern District of Florida and the bankruptcy court, by virtue of the standing order of reference, is the federal court initially seized with jurisdiction over all property of the Debtor as of March 16, 1998; thus, all other courts are prohibited from exercising jurisdiction over such matters." (Trustee's Motion to Dismiss, ¶ 5).

In addition, Welt argues that, in exercise of her police power under the FLSA, the Secretary seeks to prohibit Welt from taking possession of HSSI's clinical patient reports, billing documents and any other documents produced with information obtained therefrom. Welt contends that this Court lacks subject matter jurisdiction because the U.S. Bankruptcy Court has already taken exclusive jurisdiction over the "hot goods" pursuant to the previously filed Chapter 11 and Chapter 7 bankruptcy proceedings. Therefore, Welt asserts that this Court is precluded from exercising jurisdiction over HSSI's property because such exercise would hinder the bankruptcy court's administration of the debtor's estate. (Trustee's Motion to Dismiss, at 4).

Lack of subject matter jurisdiction may be raised at any time during the proceeding. *Oliver v. Trunkline Gas Co.*, 789 F.2d 341, 343 (5th Cir.1986). A federal court always has the power to determine its own subject matter jurisdiction. *United States v. United Mine Workers of America*, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947).

The automatic stay provisions of the bankruptcy code, 11 U.S.C. § 362(a)(1) and (2), operate as a stay of all judicial and administrative proceedings involving the debtor or property of the debtor's estate. 11 U.S.C. § 362(a). However, Congress exempted certain actions and entities. Section 362(b)(4) provides that the filing of a bankruptcy petition does not operate as a stay of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's policy or regulatory power. 11 U.S.C. § 362(b)(4). Section 362(b)(4) provides exemption from the automatic stay for:

(4) ... the commencement or continuation of an action or proceeding by a government unit ... to enforce such government unit's ... police or regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by a government unit to enforce

such government unit's police or regulatory power.

11 U.S.C. 362(b)(4) (West 1998).

■ Congress intended for the police power exception to allow governmental agencies to remain unfettered by the Bankruptcy Code in the exercise of their regulatory powers. *In re Commerce Oil Co.*, 847 F.2d 291, 295 (6th Cir.1988), (holding that Tennessee Water Quality Control Board's proceedings to fix civil liability against debtor under Tennessee Water Control Act were within "police power" exception to automatic stay in bankruptcy). As explained by the House Report[1] on the previously enacted sections 362(b)(4) and (5):

> Paragraph (4) excepts commencement or continuation of actions and proceedings by governmental units to enforce police or regulatory power. Thus, where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, safety, or similar police or regulatory laws, or attempts to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay. Paragraph (5) makes clear that the exception extends to permit an injunction and enforcement of an injunction, but does not extend to permit enforcement of a money judgment.

S.Rep. No. 95–989, 95th Cong.2d Sess. 52 (1978), reprinted in [1978], U.S.CODE CONG. & AD.NEWS 5787, 5838; H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 343 (1877), reprinted in [1978], U.S.CODE CONG. & AD.NEWS 5963, 6299.

The Sixth Circuit has recognized the clearly expressed legislative intent of Congress, *In re Arnett*, 731 F.2d 358, 360 (6th Cir.1984), and has held that damages for civil liability may be assessed under section 362(b)(4) for violation of state and federal laws. *See, e.g., NLRB v. Edward Cooper Painting, Inc.*, 804 F.2d 934 (6th Cir.1986); *U.S. v. Jones & Laughlin Steel Corp.*, 804 F.2d 348, 351 (6th Cir.1986); *In re Kovacs*, 717 F.2d 984, 988 (6th Cir. 1983), *aff'd sub nom., Ohio v. Kovacs*, 469 U.S. 274, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985).

■ There are two factors which the courts must consider in determining whether an action is excepted under section 362(b)(4). First, the Court must determine whether the government unit is bringing the action to enforce its police or regulatory power. *See, e.g., City of New York v. Exxon Corp.*, 932 F.2d 1020, 1025 (2d Cir.1991). In *Exxon*, the Court of Appeals held, inter alia, that the city's action under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) came within the police or regulatory power exception to the automatic stay. In determining whether a particular action falls within a governmental unit's police or regulatory power, Courts apply what are known as the pecuniary purpose and public policy tests.[2] *See, e.g., In re Commerce Oil Co.*, 847 F.2d 291, 295 (6th Cir.1988); *NLRB v. Edward Cooper Painting, Inc.*, 804 F.2d 934 (6th Cir.1986); *SEC v. Towers Financial Corp.*, 205 B.R. 27, 30 (S.D.N.Y.1997); *In re Wellham*, 53 B.R. 195 (Bankr. M.D.Tenn.1985). Pursuant to these complimentary tests, an action will only be

1. Section 362(b)(4) was amended and section 363(b)(5) was repealed on October 21, 1998. The amended section 362(b)(4) incorporates the language of the previous sections 362(b)(4) and (b)(5) into one encompassing subsection without any substantive change which is relevant to this matter.

2. Under the pecuniary purpose test, reviewing courts focus on whether the governmental proceeding relates primarily to the protection of the government's pecuniary interest in the debtor's property and not to matters of public safety. Those proceedings which relate primarily to matters of public safety are excepted from the stay. Under the public policy test, reviewing courts must distinguish between proceedings that adjudicate private rights and those that effectuate public policy. Those proceedings that effectuate a public policy are excepted from the stay. *In re Commerce Oil Co.*, 847 F.2d at 295.

exempt from the automatic stay of the Bankruptcy Code if the action has been instituted to effectuate the public policy goals of the governmental entity, as opposed to actions instituted to protect the entity's pecuniary interest in the debtor's property or to adjudicate private rights.

■ In the case at bar, this "hot goods" action has been instituted by a governmental unit—the Department of Labor—to further the public policy goals inherent in the minimum wage and overtime provisions of the FLSA. The relief the Secretary is seeking against the defendants is to prevent the shipment of goods in interstate commerce that have been produced by employees of a company that has not adhered to the minimum standards of worker protections set forth in the FLSA. The Secretary is not seeking to protect a pecuniary interest, and the issuance of the requested injunction would not adjudicate private rights. *See, e.g., Donovan v. TMC Industries, Ltd.,* 20 B.R. 997, 1000 (N.D.Ga.1982) (An injunction preventing the sale or transportation of goods produced by individuals who were employed in violation of the FLSA is not to collect a debt, but rather to redress a wrong being done to the public good.).

The Sixth Circuit has not addressed whether a "hot goods" action brought by the Secretary is excepted from the automatic stay. In the case of *In re Commerce Oil Co.,* 847 F.2d 291 (6th Cir.1988), the Appeals Court considered a similar injunctive action brought by the State of Tennessee to enforce the Tennessee Quality Control Act against a bankruptcy debtor. The Court held that the action was regulatory in nature and, therefore, fell within the police power exception to the automatic stay.

The Sixth Circuit declined to adopt the premise that preservation of the debtor's estate is of greater priority in the statutory scheme set forth by Congress in Title 11 of the Bankruptcy Code than is the enforcement of police powers explicitly intended to be excepted from the automatic stay. The Court held that the plain meaning, the structure and the policy behind section 362(b) all indicate otherwise. (*Id.* at 297) (citing and quoting *Commodity Futures Trading Comm. v. Co. Petro Marketing,* 700 F.2d 1279, 1283 (9th Cir.1983)). ("[T]he policy behind the 'police and regulatory exception' to the automatic stay is to prevent the bankruptcy court from becoming a haven for wrongdoers.").

The Secretary has filed the instant action seeking to enforce or exercise the regulatory power pursuant to the FLSA and therefore would be exempted from the automatic stay. See *In re Commerce Oil, Co.,* 847 F.2d 291, 295 (6th Cir.1988); *In re Arnett,* 731 F.2d 358, 360 (6th Cir.1984). Thus, notwithstanding the order of reference, the court has subject matter jurisdiction.

### FLSA v. BANKRUPTCY CODE

■ Next, Welt argues that the Secretary has failed to state a cause of action on which relief can be granted because the distribution scheme of the Bankruptcy Code cannot be altered in favor of paying employee claims under the Act.

Welt states that because the debtors' former employees' claims are subject to ultimate satisfaction under the Bankruptcy Code, these claims will be afforded relief according to their relative priority in relation to all other claims against the Debtors' estates. Additionally, the Act must yield to the Bankruptcy Code, and this Court cannot fashion any relief to alter this irrefutable conclusion drawn from interpretation of the two federal statutes. Welt emphasizes that absent some provision to the contrary, the distribution scheme set forth in the Bankruptcy Code is one of "equality of distribution; and if one claimant is to be preferred over others, the purpose should be clear from the statute." *Nathanson v. National Labor Relations Board,* 344 U.S. 25, 29, 73 S.Ct. 80, 83, 97 L.Ed. 23 (1952) (holding that a back wage claim in favor of the NLRB was

not entitled to priority over other estate creditors).

Moreover, Welt contends that while a court's ruling may seem socially repugnant by rewarding the offender for violating its statutory obligations, this is a result that is legally correct in light of conflicting bases of statutory authority.

In response, the Secretary contends that the injunctive action is not precluded by the employee's wage claims before the bankruptcy court. (Sec. Resp., at 10, ¶ 2). Further, the Secretary argues that Welt has mischaracterized this injunctive action as a wage claim on behalf of the HSSI employees. While the Secretary seeks to remove the "taint" from the "hot goods" that have been shipped in violation of section 15(a)(1), this portion of the Secretary's case does not constitute the pursuit of a money judgment. *Id.* at 10.

The Sixth Circuit has not addressed removal of the "taint" from "hot goods" that have been shipped in violation of section 15(a)(1). However, the District Court for the Northern District of Georgia specifically addressed this issue in the case of *Donovan v. TMC Industries, Ltd.*, 20 B.R. 997 (N.D.Ga.1982). In that case, the Secretary of Labor sought an injunction of section 15(a)(1) violations. The Secretary attempted to enjoin the sale or transport of goods produced by individuals who were not legally compensated by debtor within meaning of the FLSA. As here, the subject business was in Chapter 11 bankruptcy before the Secretary brought the section 15(a)(1) action. The Court thoroughly reviewed the statutory authority and the case law concerning the automatic stay and concluded that the Secretary's action was an exercise of police powers not barred by the Bankruptcy Code.

With regard to removing the "taint" from the "hot goods," the Court recognized that "provision must be made for certain payments to the Secretary." The Court concluded that:

Although the sum required to remove the "taint" of such goods is measured by the unpaid wages of employees of WWG employed in the production of these goods, the sums provided for herein are not wages but are the sums required to purge the above-described taint under the FLSA.

20 B.R. at 1006.

Here, the Secretary is not seeking to protect a pecuniary interest. Rather, the Secretary is attempting to redress a wrong being done to the public good. Accordingly, the above-decision establishes that this injunctive pursuit by the Secretary to remove the "taint" from the "hot goods" shipped pursuant to this Court's Modified TRO is not precluded by the bankruptcy proceedings.

■ Next, Welt argues that this Court cannot grant any relief to the Secretary because the documents and records that Welt seeks to transport and ship in interstate commerce are not "goods" under 29 U.S.C. § 203(i). (Trustee's Motion to Dismiss, at 11). The FLSA provides a broad definition of the term "goods." Section 3(i) defines the term "goods" as follows:

"Goods" means goods (including ships and marine equipment), wares, products, commodities, merchandise, or articles or subjects of commerce or any character, or any part or ingredient thereof, but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer or manufacturer.

29 U.S.C. § 203(i).

The Supreme Court has held that the FLSA is to be construed broadly to apply to the farthest reaches consistent with congressional direction. *Overstreet v. North Shore Corp.*, 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. 656 (1943). Further, Congress intended the FLSA "to extend federal control in this field throughout the farthest reaches of channels of interstate commerce." *Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 567–68, 63 S.Ct. 332, 335,

87 L.Ed. 460 (1943) ("Where wholesale distributor of paper products picked up at terminals of interstate carriers goods destined to specific customers, no mere placing of goods in wholesale distributor's warehouse for checking before delivery to customers could take the goods out of 'commerce' so as to render inapplicable the FLSA.").

As expressed in section 776.20(b) of the interpretative regulations for the FLSA, it has been the Secretary's long standing administrative position that " 'goods' as defined in the Act are not limited to commercial goods or articles of trade, or, indeed, to tangible property, but include, 'articles or subjects of commerce of *any character*' (emphasis added)." 29 C.F.R. § 776.20(b). The regulation includes an illustrative list of [o]ther articles or subjects of commerce which fall within the definition of "goods." This illustrative list includes, as relevant to this case, the following items: " . . . written reports, fiscal and other statements and accounts, correspondence, . . . and other documents; . . . bills of lading, checks, drafts, negotiable notes and other commercial paper . . . ." 29 C.F.R. § 776.20(b).[3]

In *Western Union v. Lenroot,* 323 U.S. 490, 502, 65 S.Ct. 335, 341, 89 L.Ed. 414 (1945), the Supreme Court observed that items such as " 'ideas, wishes, orders, and intelligence' " had been held to be the "subjects" of interstate commerce (*Id.* at 502, 65 S.Ct. 335, quoting *Western Union Tel. Co. v. Pendleton,* 122 U.S. 347, 356, 7 S.Ct. 1126, 30 L.Ed. 1187 (1887)). Accordingly, the Court determined that telegraphic messages are "clearly 'subjects of

commerce' " and therefore, "goods" under the Act. 323 U.S. at 502–503, 65 S.Ct. 335.

Several courts also have held that the various kinds of business documents destined for out-of-state (e.g., written reports, fiscal and other statements, accounts and correspondence) constitute "goods" under the FLSA. 20 C.F.R. § 776.20(b); *see, e.g., Wirtz v. Steepleton General Tire Co., Inc.,* 330 F.2d 804 (6th Cir.) (holding that employees who handled, transported, and worked on truck and automobile tires destined for customers outside the state were covered by the Fair Labor Standards Act).

In this situation, the clinical patient reports and billing documents constitute goods. The documents and records that Welt seeks to transport via interstate commerce are goods in accordance with 29 U.S.C. § 203(i). The above-named items are articles of trade and conform to the definition of goods previously set forth.

Relying on *Mitchell v. Welcome Wagon, Inc.,* 139 F.Supp. 674, 679 (W.D.Tenn. 1954), *aff'd,* 232 F.2d 892 (6th Cir.1956) and *Bozant v. Bank of New York,* 156 F.2d 787 (2d Cir.1946), Welt argues that all of the documents in this case, including the clinical reports, do not constitute goods because the documents have no value of their own except as records and they have only an incidental relationship to the HSSI's business.[4] (Trustee's Motion to Dismiss, at 11). Welcome Wagon, Inc., through employees called hostesses, was engaged in (1) offering a local consumer service to business establishments and (2) performing that service on behalf of the establishments subscribing to the service. The hostesses would supply their subscrib-

---

3. Such administrative interpretations are entitled to "great deference." *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 793, 13 L.Ed.2d 616 (1965), *rehrg. den.,* 380 U.S. 989, 85 S.Ct. 1325, 14 L.Ed.2d 283; *see also, Whirlpool Corp. v. Marshall,* 445 U.S. 1, 11, 100 S.Ct. 883, 889, 63 L.Ed.2d 154 (1980) (OSH Act). Courts are to follow such administrative interpretations "unless there are compelling indications that it is wrong." *Red Lion Broadcasting v. F.C.C.,* 395 U.S. 367, 381, 89 S.Ct. 1794, 1801, 23 L.Ed.2d 371 (1969).

4. The strict standard of "goods" proposed by Welt is not reasonable because it would exclude documents produced by numerous businesses from the "hot goods" provision simply because such businesses' operations are diversified. This position is inconsistent with the FLSA's remedial and broad reaching purpose. *See, e.g., Overstreet v. North Shore Corp.,* 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. 656 (1943).

ers with written reports (confidential daily reports) which provided information concerning the buying habits of the local families. The reports were only mailed to the divisional office to be used as a barometer of the activities of the hostesses. In *Welcome Wagon*, the Court noted that the "confidential daily reports" were not "goods" because they were mailed for use in the internal management of the business. 139 F.Supp. at 676.

In the case at bar, the subject documents are distinguishable from those in *Welcome Wagon*. Here, the clinical patient reports are not internal documents. They are produced as an objective of HSSI's business. HSSI supplies the subject clinical patient reports to others (i.e., treating physicians, insurance carriers and Medicare) and these documents are used for billing and bookkeeping purposes.

Moreover, the clinical patient reports are produced for multiple purposes. They are used by each patient's treating physician to develop a plan of care. Without these reports, the treating physicians cannot complete their health care duties to their patients. The documents also are essential for HSSI to produce the payroll and the billing for the home health care. HSSI further uses the documents in order to serve as each Medicare patient's representative during Medicare audits. These facts establish that the production of these clinical patient reports are sufficiently related to HSSI's business and are distinguishable from the internal documents in *Welcome Wagon*.

In addition, the documents here are distinguishable from those in *Bozant* because they have intrinsic value. In *Bozant*, the Bank was in the business of preparing announcements, pamphlets, and brochures. In addition to these activities, it prepared notes, drafts, and other commercial paper. The Court concluded that no manufacturing, production, or handling of goods for commerce transpired at the Bank, and that therefore the Bank was not engaged in the production of goods for commerce

under section 203 of the FLSA. Here, HSSI entered into a contract with each Medicare patient to serve as their representative to obtain reimbursements and substantiate the claim during Medicare audits. The Medicare patients contracted with HSSI to produce the documents as part of the representative agreement. (Preliminary Injunction Hearing, Exhs. GX 2–3). HSSI obtained a fee for the production of the documents. The documents are bought and sold as a result of the fees paid HSSI to produce and ship them. *See Willmark*, 215 F.Supp. at 581. Accordingly, the Court finds that these clinical patient reports constitute "articles of trade" and, therefore, comply with the stricter interpretation of "goods" as expressed in *Bozant*. The Court also finds that the documents in this case constitute "goods" under the broad standard enunciated by the majority of the courts.

 Lastly, Welt argues that the Secretary has failed to state a cause of action because HSSI employees are not covered under the FLSA inasmuch as they are engaged in purely local activities. (Trustee's Motion to Dismiss, at 12).

It is undisputed that clinical patient reports and billing documents that are the focus of this injunctive action were regularly and recurrently shipped by HSSI in interstate commerce. Therefore, the HSSI employees who produced and handled the subject "hot goods" are covered under the FLSA. *See, e.g., RPT, PRN, L.L.C.*, 132 Lab. Case ¶ 33,455, 1996 WL 728159 (C.D.Cal.1996).

Here, the HSSI nurses and therapists are also covered under the FLSA inasmuch as they regularly handled and used medical supplies that HSSI obtained from out-of-state. *Id.* Accordingly, the Court finds that the HSSI employees are required to be paid the statutory wages.

## ABSTENTION FROM EXERCISING JURISDICTION

 Welt argues that this Court should abstain from the instant proceed-

ings due to: (1) the fact that the Bankruptcy Court for the Southern District of Florida was initially seized of the matter, and (2) this Court's exercise of jurisdiction would render duplicative litigation.

First, in Welt's Motion to Dismiss the Secretary's Complaint as an alternative form of relief Welt asks the court to abstain from exercising jurisdiction in favor of the Bankruptcy Court for the Southern District of Florida. Welt asserts that this Court should abstain from exercising jurisdiction because the Bankruptcy Court preemptively exercised jurisdiction over the goods in question. *Colorado River,* 424 U.S. at 818, 96 S.Ct. at 1247; *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu,* 675 F.2d 1169 (11th Cir.1982).

However, the Secretary contends that there is no basis for this Court to abstain from exercising jurisdiction over this "police power" action. The Secretary asserts that the Bankruptcy Court lacks jurisdiction over a claim concerning a government entity's express authority.

■ The protection afforded by bankruptcy laws is not intended to prevent government entities from bringing valid enforcement actions against debtors-in-possession. *City of New York v. 1820–1838 Amsterdam Equities, Inc.,* 191 B.R. 18 (S.D.N.Y.1996).

In the instant case, it is clear that the Bankruptcy Court lacks jurisdiction to decide possible injunction of a government entity's exercise of its police powers. *Hansen v. Borough of Seaside Park,* 164 B.R. 482, 486 (D.N.J.1994). Accordingly, there is no basis for this Court to abstain from exercising jurisdiction over this "police power" action.

Lastly, Welt argues that the Secretary's entreaty for a preliminary injunction under the "hot goods" doctrine of the FLSA is duplicative of the bankruptcy case currently pending in the Southern District of Florida. Welt emphasizes that the bankruptcy court has exclusive jurisdiction over the books and records of which the Secre-

tary seeks to have this Court enjoin Welt from obtaining possession. Welt argues that those books and records are property of the estate pursuant to 11 U.S.C. § 541. Moreover, he contends that "this Court's exercise of jurisdiction over the books and records which are property of the estate, will usurp the bankruptcy court's jurisdiction to adjudicate employee claims." (Trustee's Motion to Dismiss, at 14). Without the books and records, Welt states that he will be unable to generate any income for the estate with which to pay employees. *See* 11 U.S.C. § 704.

In response to Welt's argument that the Court should not attempt to exercise jurisdiction due to the possibility of duplicative litigation, the Secretary asserts that the injunctive action is not duplicative of the bankruptcy proceedings because it is not brought on behalf of any creditor to collect a debt. Further, the Secretary states that any statutory wages resulting from this injunctive action constitute a remedy to remove the "taint" that currently contaminates the "hot goods." *TMC Industries,* 20 B.R. at 1006.

■ The United States Supreme Court has recognized that the purpose of this section 15(a)(1) action is to "eliminate the competitive advantage enjoyed by goods produced under substandard conditions." *Citicorp Indus. Credit, Inc. v. Brock,* 483 U.S. 27, 107 S.Ct. 2694, 2700, 97 L.Ed.2d 23 (1987). It "is not simply a means to enforcement of other statutory goals; it is itself a central purpose of the FLSA." (*Id.* 483 U.S. at 36, 107 S.Ct. at 2700, n. 8.). An action to enforce the section 15(a)(1) prohibition is brought, "not to compel the foreclosing creditor to pay the statutory wages or to put pressure on the defaulting producer to pay such wages, but to keep tainted goods from entering the channels of interstate commerce." (*Id.* 483 U.S. at 37–39, 107 S.Ct. at 2701.).

Here, Welt does not fully consider that the documents in question are "hot goods" under the jurisdiction of the District

Court's TRO. As an exercise of its equitable authority, this Court issued a modified TRO that serves as a mandatory injunction ordering Welt to continue to ship, deliver, and process the "hot goods" through the stream of commerce under the Court's control. Further, supervision was ordered to preserve the value of the "hot goods" and to create a pool of funds with which to remedy the section 15(a)(1) violation.

Moreover, the Court has recognized that the subject "hot goods" will loose their value unless HSSI's billing process continues to occur in a timely and status quo fashion. The Court issued this order under the equitable powers in order to grant a remedy for the section 15(a)(1) violations in this case. If not for the Court's actions, no funds resulting from the "hot goods" would exist. Therefore, the collected funds that result from this court-ordered shipment remain "tainted" and serve as a substitute for the shipped "hot goods" until the section 15(a)(1) violation is remedied. (Trustee's Exh. 9, at 3–6). Thus, there is no question that the preliminary injunction is necessary to accomplish what Welt admits he is unwilling and/or unable to do through the bankruptcy proceeding.

Accordingly, this Court finds that the Secretary's section 15(a)(1) action can in no way be categorized as duplicative of the bankruptcy proceeding. Thus, the Trustee's Motion to Dismiss on all points is **DENIED.**

Additionally, Capital Healthcare Financing, a Division of Capital Factors, Inc. joined in the Trustee's Motion to Dismiss. (*See* Capital Healthcare Financing, A Division of Capital Factors, Inc.'s Joinder in Trustee's Motion to Dismiss, at ¶ 1). For the reasons set forth herein, Capital's Motion to Dismiss is **DENIED.**

## DEFENDANT RON LUSK'S MOTION TO DISMISS

The Secretary seeks to hold Lusk liable individually and as President of HSSI. The Secretary contends that while serving as HSSI's president, Lusk acted directly or indirectly in the interest of HSSI, and that he is an employer within the meaning of section 3(d) of the FLSA. (29 U.S.C. § 203(d)). The Secretary maintains that Lusk repeatedly violated the provisions of Sections 6 and 15(a)(1) of the FLSA, (29 U.S.C. § 206 and § 215(a)(1)), by paying certain employees who were regularly engaged in commerce or in the production of goods for commerce, inter alia, wages at rates less than the applicable minimum hourly rate prescribed. Lastly, the Secretary claims that Lusk also violated the provisions of sections 7 and 15(a)(2) of the FLSA, (29 U.S.C. § 207 and § 215(a)(2)), by employing employees who were engaged in commerce or in the production of goods for commerce, for extensive workweeks without compensation.

Lusk argues that in the cases where an officer, as an individual, has been found to be an employer under the FLSA, the officer exercised substantial control over the management of the corporation and the officer had considerable authority with regard to employment decisions. *See Shultz v. Chalk–Fitzgerald Construction Co.*, 309 F.Supp. 1255 (D.Mass.1970). *See also; Brennan v. Whatley*, 432 F.Supp. 465 (E.D.Tex.1977); *Usery v. Weiner Bros., Inc.*, 70 F.R.D. 615 (D.Conn.1976); *Hodgson v. Royal Crown Bottling Co.*, 324 F.Supp. 342 (D.Miss.1970), *aff'd*, 465 F.2d 473 (5th Cir.1972).

Moreover, Lusk asserts that in this situation, he did not exercise control over the hiring and firing of the debtor's employees, nor did he control the employees' work hours. Lusk admits that he did have the authority to affect the interest of the debtor in relation to its employees; however, states that he did not act on that authority. Lusk further contends that he was able to rely upon competent managers who were ultimately responsible for setting the work hours for the employees as well as determining the overtime hours. Additionally, Lusk maintains that he was not "personally involved in the corporation's failure to

provide wages to its employees; rather, the Defendant, Capital Factors, Inc., was responsible for the payments of wages and overtime compensation." (Lusk's Motion to Dismiss, at 5, ¶ 1). Thus, Lusk emphasizes that he is not an employer under section 3(d) of the FLSA (29 U.S.C. § 203(d)).

In order to bring a claim against a defendant under sections 6, 7, 15(a)(1), and 15(a)(2) of the FLSA, the plaintiff must make a showing that the defendant is an "employer." Personal liability under the FLSA is predicated on the individual deemed to be an employer under the definition given in section 3 (29 U.S.C. § 203). In accordance with the FLSA, an employer is defined as follows:

> any person acting directly or indirectly in the interest of an employer in relation to any employee but shall not include the United States or any State or political subdivision of a State ... or any labor organization (other when acting as an employer), or anyone acting in the capacity of officer or agent of such labor organization.

29 U.S.C. § 203(d). Although the Sixth Circuit has not explicitly ruled on the issue of whether individuals are "employers" under the FLSA, other circuits have analyzed the issue. For instance, the Eastern District of Arkansas has held that in deciding whether an individual is an employer under the FLSA, the "courts have looked to such factors as the control of hiring and firing of employees, control of the manner in which work is performed, and the fixing of employee wages ..." *Dole v. Continental Cuisine, Inc.*, 751 F.Supp. 799, 802 (E.D.Ark.1990). In addition, the First District Court of Appeals has held that a corporate director was personally liable for violating minimum wage and overtime compensation requirements under the FLSA. *Donovan v. Agnew*, 712 F.2d 1509 (1st Cir.1983). The Court found that a corporate director may be deemed an "employer" under the FLSA, and he may be held personally liable as an employer. *Id.*

In *Donovan*, the Court noted that the corporate officer personally supervised the daily cash flow operations of the corporation. Thus, the Court held that the corporate officer was liable as an employer in his individual capacity within the definition of the FLSA § 203. *Id.*

Here, Lusk is an employer in accordance with the FLSA. The Court finds that the Secretary alleges facts sufficient enough to make a showing that Lusk exercised control over the hiring and firing of Capital's employees in addition to controlling the employee's hours. For instance, the Secretary asserts that Lusk employed employees who "worked out of the local branch offices and regularly engaged in supplying home health care to patients...." (Secretary's Complaint, at 4, ¶ 2). Also, the Secretary alleges that beginning on or about January 23, 1999, Lusk repeatedly paid certain employees wages less than the applicable minimum hourly rate prescribed. (*Id.* at 8). These employees were generally engaged in commerce or in the production of goods for commerce. Finally, Lusk allegedly hired employees who have been engaged in the production of goods for commerce, for workweeks in excess of 40 hours with failure to compensate these employees for the additional hours at rates not less than one and one-half times the standard rates at which they were employed.

Lusk contests the allegations by arguing that he is not an employer under the FLSA § 203, and, therefore, not personally liable for violations of the FLSA. *Wirtz v. Pure Ice Co.*, 322 F.2d 259 (8th Cir. 1963). In *Wirtz*, the Eighth Circuit Court of Appeals focused its analysis on the actions performed by the Vice–President in relation to the corporation's employees. *Id.* The Court pointed out that the Vice–President had delegated managerial and employment duties to various managers within the corporation. (*Id.* at 261). Moreover, the Court found that although the Vice–President "could have taken over and supervised the relationship between

the corporation and its employees had he decided to do so ... he did not do so." *Id.* Lusk provided no additional arguments in support of his contention.

In each of the above named capacities, Lusk either acted directly or indirectly within the interest of the corporation. Thus, the Court finds that Lusk did exercise substantial control over the management of the corporation, that he is an employer under the definition provided by the FLSA § 203, and he may be held personally liable for violations of the FLSA. Accordingly, Defendant Lusk's Motion to Dismiss the Secretary's claim is **DENIED.**

### CONCLUSION

Accordingly, the Court **DENIES** the Trustee's Motion to Dismiss, Capital Factor's Motion to Dismiss, and Ron Lusk's Motion to Dismiss with respect to all points.